**H. P. ALLISON et al., Appellants,**

**v.**

**R. E. SMITH et al., Appellees.**

**No. 3163.**

Court of Civil Appeals of Texas.

Eastland.

April 8, 1955.

Rehearing Denied May 13, 1955.

Neill, Blanks, Lewis & Logan, San Angelo, Snodgrass & Smith, San Angelo, for appellants.

Bryan, Suhr & Bering, W. N. Finnegan, III, Houston, Sentell, Rosser & Willbern, Park & Hemphill, Snyder, Bill L. Holland, San Angelo, David W. Stephens, Ft. Worth, Pat S. Moore, Lubbock, for appellees.

LONG, Justice.

On March 27, 1941, Bertha B. Clark conveyed to Nedra Neely an undivided one-half interest in the oil, gas and other minerals in the Northwest 1/4th and Southeast 1/4th of Section 124, Block 25, H. & T. C. Ry. Co. Land in Scurry County, Texas, retaining the exclusive right to execute mineral leases but the grantee being entitled to one-half the bonuses, rentals and royalty accruing under such leases, the reservation being as follows:

"Grantor, her heirs and assigns, hereby reserve the exclusive right to make and execute any and all future oil and gas leases covering the herein conveyed property, or any part thereof, without being joined therein, by the Grantee, her heirs and assigns, but the Grantee, her heirs and assigns shall be entitled to participate in one-half of all bonuses, rentals, royalties and other benefits accruing or to accrue under any future leases."

On January 28, 1944, Bertha B. Clark conveyed to Marvin Key the North one-half of said Section 124, subject to the outstanding mineral interests. At the time of the trial Marvin Key owned the surface and one-half the minerals and the title to the other one-half of the minerals was vested as follows:

1/16 in the Estate of R. H. Hawn

1/32 in S. F. Hurlburt

1/32 in Bruce Baxter

1/8 in Sam G. Dunn

1/4 in Appellants.

On June 30, 1948, Marvin Key, assignee of Bertha B. Clark, acting under the power reserved in the deed from Clark to Neely, executed an oil and gas lease to R. E. Smith covering the North 1/2 of said Section 124 for a term of ten years. The lease provided that rentals due under the lease should be deposited to the credit of lessors in the Snyder National Bank in Snyder, Texas. The lessee, Smith, timely paid the rentals to all of the mineral owners except appellants. The rentals accruing to them were deposited in the despository bank to the credit of Nedra Neely.

On December 9, 1950, Hon. Scott Snodgrass, an attorney of San Angelo, Texas, acting in behalf of the appellants, sent to Marvin Key the following letter:

"Mr. Marvin Key
"Knapp, Texas
"Dear Mr. Key:

"Mr. H. P. Allison, whose address is 401 West Twohig Avenue, San Angelo, Texas, represents and has a power of attorney from six of his brothers and sisters and a nephew and

niece. Mr. Allison and the persons for whom he acts together own one-fourth of the minerals under the NW/4 of Survey No. 124, Block 25, H & T. C. Ry. Co. lands in Scurry County, Texas, and they understand that you own the surface and some interest in the minerals under this land.

"I write you on behalf of the Allisons to advise you for them that if their interest in the minerals in the NW/4 of Survey 124, ever has been leased they have not received either any part of the bonus or any part of any delay rentals and if their interest has been leased under a lease which has required the payment of delay rentals in order to keep it in effect they no longer consider the lease to be in effect on their interest.

"Please understand that the Allisons know of nothing which would cause any dispute to exist between you and them and this letter deals solely and only with the mineral interest owned by the Allisons.

"Since the Allisons understand that the NW/4 of Survey 124 now has a substantial value from a mineral standpoint they consider the lease rights upon their interest in the minerals to be of substantial value and if you have the right to execute a lease or any other instrument binding their mineral interest they do not consent for you to do so unless they are paid the full value as the same now exists.

"The Allisons would like very much for you to communicate with them in the event anyone approaches you in an attempt to get you to execute any character of instrument affecting their mineral interest and if you either will write to me or call me on the telephone collect, Office 'Phone 5028, Home 'Phone 6290, San Angelo, I will see that they do get in touch with you immediately.

"Please consider this letter notice that in view of the present situation the Allisons do not consent to the execution of any lease or other instrument affecting their title without their first being consulted about it and in no event will they consent to the execution of any such instrument in the absence of a full and adequate payment being made to them therefor.

"I again repeat that this letter deals only with the mineral interest owned by the Allisons.

"It will be appreciated very much if you will acknowledge receipt of this letter and at the same time give me assurance for the Allisons that you will not execute any instrument affecting their minerals without first submitting the matter to them.

"Thanking you for your cooperation,

"Yours very truly,
"(s) Scott Snodgrass
"Scott Snodgrass."

Mr. Key received the letter and delivered it to appellee, R. E. Smith. After this letter was received, Mr. Smith went to San Angelo and there conferred with Mr. Snodgrass and one of the appellants, H. P. Allison, in an effort to secure a ratification of the lease executed in 1948. The parties failed to agree upon the terms of ratification. Thereafter, Mr. Snodgrass wrote Mr. Key the following letter:

"January 6, 1951
"Mr. Marvin Key
"Knapp, Texas

"Dear Mr. Key:

"I wrote you on December 9 about the interest of Mr. H. P. Allison and those he represents in the minerals under the NW/4 of Survey 124, Block 25, H. & T. C. Ry. Co. lands in Scurry County, Texas.

"I am writing again to advise you that Mr. R. E. Smith of Houston, Texas, who owns some interest in the lease which you executed in 1949 on the N/2 of Survey 124, has been to San Angelo seeking to reach some sort of

agreement with the Allisons in respect to their one-fourth of the minerals in the NW/4.

"Mr. Smith and the Allisons have not reached an agreement and this letter is to re-affirm everything said to you in my letter of December 9, 1950, and to add to the statements therein contained the advice to you that since all your interest in the minerals in the NW/4 of Survey 124 now is subject to lease and since the lease has been allowed to lapse by its own terms in so far as it may have covered the Allison minerals interest the Allisons at this time do not recognize your right to execute any character of lease or other contract or instrument which will affect their minerals title. Any attempt by you to do so under the present circumstances might cloud the Allison title and might cause the Allisons to suffer substantial damages and if you should cause the Allisons damage by executing any instrument which might affect or cloud their mineral interest they would expect you to make good to them all such damages.

"In 1949 you did everything you agreed to do for the bonus which was paid to you at that time and the fact that the lease on the Allison interest may have been allowed to terminate is not a fact for which you are responsible. Nor does this fact excuse the lessee from doing such drilling on the property as he may be obligated to do under this lease.

"The Allisons will appreciate very much your respecting their wishes in the matter and their positon that under the present circumstances you do not have a right to execute any instrument affecting their minerals. If you doubt the soundness of their position it will be appreciated if you will consult a disinterested attorney of your own choosing and present the facts to him.

"Yours very truly,
"Scott Snodgrass."

A copy of this letter was sent to and received by appellee Smith. Thereafter, on March 15, 1951, Marvin Key, acting again under the power granted in the deed from Clark to Neely, executed an oil and gas lease in favor of R. E. Smith covering the Northwest ¼th of said Section 124 and containing, among other things, an unconditional obligation by Smith to commence the drilling of a well thereon on or before April 14, 1951. Smith began the drilling of a well on the land before said date, which was completed on April 29, 1951 as a producer, at a cost in excess of $90,000. Three additional producing wells were drilled thereafter at a similar cost.

This is a suit by appellants to cancel as to their undivided one-fourth interest in the minerals the two oil and gas leases, one dated June 30, 1948 and the other March 15, 1951. Appellants allege, among other things, that no operations for drilling a well were commenced on the lands covered thereby within one year from the date of the lease and that no delay rentals were paid to appellants in lieu thereof. They further alleged that Marvin Key had no authority to bind them by the execution of the lease dated March 15, 1951 for the reason that he was purportedly acting under the authority given him in the deed from Clark to Neely and that such power was revoked by them prior to the execution of said lease; that if the power given him under said reservation was not revoked that he had no authority to make a drilling contract on the land but only had the authority to execute an oil and gas lease for a cash bonus.

The case was tried before the court with the aid of a jury. The special issues submitted to the jury and its answers thereto are as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the defendant R. E. Smith would have proceeded to drill the wells on the NW/4 of Section 124 without unreasonable delay if the lease received by him on March 15, 1951, had been a lease of

the plaintiffs' one-fourth interest with royalty and other provisions like the lease he received but without the drilling obligations? Answer: 'Yes.'

"Special Issue No. 2. Do you find from a preponderance of the evidence that defendant Marvin Key by the exercise of a reasonably diligent effort could have effected a lease of the Allison's one-fourth mineral interest upon terms substantially of greater benefit to the Allisons than the lease made by him on March 15, 1951? Answer: 'No.'

"Special Issue No. 3. Do you find from a preponderance of the evidence that when the defendant Smith took the lease dated March 15, 1951, he understood that the defendant Key, in entering into and making said lease, had the intent and purpose that he and the other royalty owners (the Hawns, Baxter Estate, Hurlburt and Dunn) should share equally on a pro-rata basis any and all benefits which might be achieved from a leasing of the Allison interest? Answer: 'Yes.'

"Special Issue No. 4. Do you find from a preponderance of the evidence that when the defendant Smith took the 1951 lease he understood that the defendant Key had not made a reasonably diligent effort to obtain for plaintiffs the reasonable value of a lease of their one-fourth (1/4) interest? Answer: 'No.'

"Special Issue No. 5. Do you find from a preponderance of the evidence that defendants Key and Smith placed the drilling obligations in the March 15, 1951, lease for the purpose of evading defendant Smith's paying to plaintiffs a cash bonus or a greater royalty for said lease? Answer: 'No.'

"Special Issue No. 6. Do you find from a preponderance of the evidence that due regard for the best interest of the Allisons required that the defendant Key, before delivering to defendant Smith the 1951 lease, should have secured a substantial bonus therefor or

retained a greater royalty than that which was retained therein? Answer: 'No.'

"Special Issue No. 7. Do you find from a preponderance of the evidence that a reasonably prudent operator under the same or similar circumstances as defendant Smith would have been willing to drill wells substantially as defendant Smith drilled them on the NW/4 of Section 124 and without unreasonable delay, holding a valid lease on an undivided 3/4 interest, but without a lease on the plaintiffs' one-fourth interest? Answer: 'No.'

"Special Issue No. 8. Do you find from a preponderance of the evidence that Marvin Key did not act in good faith towards plaintiffs when he executed the oil, gas and mineral lease to R. E. Smith on March 15, 1951? Answer: 'He did act in good faith.'

"Special Issue No. 9. Do you find from a preponderance of the evidence that the Oil, Gas and Mineral Lease executed by Marvin Key to R. E. Smith on March 15, 1951, had a fair cash market value on that date? Answer: 'It did not have a fair cash market value.'

"If you have answered Special Issue No. 9 'It did have a fair cash market value', and only if you so answer, answer the following special issue.

"Special Issue No. 10. What do you find from a preponderance of the evidence was a fair cash market value on March 15th, 1951, of the Oil, Gas and Mineral Lease executed by Marvin Key to R. E. Smith on March 15, 1951? Answer in dollars and cents, as you may find. Answer: '$———.' "

Based upon the jury verdict the trial court entered judgment against appellants, hence this appeal.

It is the contention of appellants that the power granted to Key is not one coupled with an interest and that at the time of the execution of the lease on March 15, 1951,

Key had no interest in the minerals, except his royalty interest under the oil and gas lease, and that, therefore, the letters from Snodgrass to Key had the effect of revoking such power and that the lease dated March 15, 1951 is void and does not convey the interest of appellants in the minerals. We do not agree with this contention. The letters from Snodgrass to Key did not revoke the power given in the deed from Clark to Neely and which was later conveyed by Clark to Key. The power was one coupled with an interest and was not revokable at the will of appellants. Superior Oil Co. v. Stanolind Oil & Gas Company, Tex.Civ.App., 230 S.W.2d 346, 150 Tex. 317, 240 S.W.2d 281; Odstrcil v. McGlaun, Tex.Civ.App., 230 S.W.2d 353.

For the purpose of this opinion, we will assume, without deciding, that the lease dated March 15, 1948 had forfeited as to ¼th of the minerals because of the failure of the lessee to pay the delayed rentals to appellants. If this be true, then when Key executed the lease to Smith on June 30, 1951, Smith had a valid lease on Key's one-half and ¼th of the minerals owned by other parties. At that time Smith held no lease on the ¼th of the minerals which were owned by appellants. It is urged by appellants that because Key had parted with his one-half of the minerals and had no interest therein, except the royalty he might receive under the lease in the event of production, that his power to lease the mineral interests of the Allisons was no longer coupled with an interest and, therefore, revokable.

By the reservation in the deed from Clark to Neely, the grantor reserved for herself, her heirs and assigns, the exclusive right to execute oil and gas leases covering the property conveyed, or any part thereof, without being joined by grantee, her heirs or assigns. Marvin Key, as assignee of Bertha B. Clark, succeeded to the rights reserved by her in said deed. The primary purpose of making an oil and gas lease is to obtain exploration and development of the land. The power to make oil and gas leases reserved by Bertha B. Clark was for her benefit and to protect her one-half

interest in the minerals. It was retained to prevent parties acquiring an interest in the minerals from hindering development. It is evident that it would have been impossible to secure a lessee who would drill a well on the land with the one-fourth interest in the minerals owned by appellants outstanding and not covered by the lease. The jury found that a reasonably prudent operator would not have been willing to drill on the land without a lease on appellants' one-fourth interest. Key was interested in getting a well drilled. There were producing wells nearby. Although there is evidence that the territory was wildcat, still the probability of obtaining production in paying quantities was good. It was difficult to lease the one-fourth interest owned by appellants for the reason that Smith owned a lease on all the land except that part owned by appellants. It can readily be seen that he would not be willing to drill a well unless he owned all of the lease.

"A power, coupled with an interest," does not necessarily render the power irrevocable. It is well settled that the interest which an attorney in fact must have in the subject matter in order to render the power irrevocable is such a beneficial interest in the thing itself apart from the proceeds that if the power were revoked he would be deprived of a substantial right. Marvin Key had an interest in the subject matter. He owned one-half of the minerals under the land. He was interested in getting the land developed. He made an oil and gas lease on the land to Smith in 1948 under the power given him in the deed from Clark to Neely. Through no fault of his, Smith failed to pay the rentals to appellants. This brought about a condition which prevented development of the land. To revoke Key's power to make a lease on the one-fourth interest on the minerals owned by appellants would deprive him of a substantial right. If his power to make leases was revoked it would, in effect, partition the minerals. The appellants are not entitled to have their mineral interest partitioned because to do so would abrogate the reservation in the deed. It would deprive Key of his right under such contract to make

leases on the land. Odstrcil v. McGlaun, supra. The same results would follow if we should hold that the letter from Snodgrass to Key revoked Key's power to make leases on the land. Appellants had no control over the leasing of the land under the terms of the reservation in the deed from Clark to Neely. The exclusive power to execute leases was vested in Key as assignee of Bertha B. Clark. The instructions given in the letters from Snodgrass to Key were not binding on Key and he had the right to disregard them, so long as he acted in good faith. The following rule, laid down in 3 C.J.S., Agency, § 153, p. 33, is applicable here:

"Where the agent's power is coupled with an interest in the subject matter, unreasonable instructions of the principal, detrimental to the agent's interests, may be disregarded, provided the agent acts in good faith."

We do not agree with the contention of appellants that by the lease of June 30, 1948, the right to execute all future leases was divested out of Key and vested in R. E. Smith. Key, by executing the lease to Smith, did not lose his power to make future leases of the land. Smith acquired a determinable fee in the working interest in the minerals under the lease with such rights as are necessary to explore for and produce such minerals.

"But, when all is said, the right of defendants in error (who were lessees in an oil and gas lease) under the lease extends no further than to the production of oil or gas upon the leased premises and the doing of those things expressly authorized or necessarily implied in the lease as a necessary incident to the business of producing oil or gas. Their rights on the land are thus limited." Gregg v. Caldwell-Guadalupe Pick-Up Stations, Tex.Com.App., 286 S.W. 1083, 1084.

Appellants contend the leasing privilege retained in the deed from Clark to Neely did not include the right to make a lease in consideration only of an executory drilling contract. In our opinion, the reservation is not susceptible to this construction. It is nowhere provided therein that the grantor or her assigns should not have the right to execute leases for a consideration of wells to be drilled. The jury found that Key, by the exercise of diligence, could not have effected a lease of appellants' one-fourth interest upon terms which would have been of substantially greater benefit to appellants than the lease dated March 15, 1951. The jury also found that Key and Smith did not place the drilling obligation in the lease for the purpose of evading payment to appellants of a cash bonus or greater royalty for the lease. The jury also found that Key acted in good faith in making the lease. These issues had ample support in the evidence. Under these circumstances the contention of appellants is overruled.

Appellants contend that the lease of March 15, 1951 did not cover their interest in the minerals because of its requirement that the royalties thereunder were to be paid to Key rather than appellants. The granting clause of this lease is as follows:

"This Agreement made this 15th day of March, 1951, between—Marvin Key —Lessor (whether one or more), and R. E. Smith, Houston, Texas, Lessee. Witnesseth:

"1. Lessor in consideration of Ten and No/100 Dollars ($10.00) and other valuable considerations in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively into Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, —and own said products, and housing its employees, the following described land in Scurry County, Texas, to-wit:

"Being all of the Northwest one-fourth (¼) of Section No. 124, Block 25, H. & T. C. Ry. Co. Surveys, Scurry County, Texas, and containing 160 acres, more or less."

The royalty provision therein is as follows:

"3. The royalties to be paid Lessor are: (a) on oil, one-eighth of that produced and saved from said land— (b) on gas—; (c) all other minerals—."

The warranty provision of the lease provides as follows:

"9. Lessor hereby warrants and agrees to defend the title to said land and agrees that lessee at its option may discharge any tax, mortgage or other lien upon said land—.

"Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if lessor owns an interest less than the entire fee simple estate, then the royalties and rentals to be paid lessor shall be reduced proportionately."

 It is clear to our minds that under this lease Key was not entitled to and could not collect the royalties due appellants and the other owners of the minerals. Under the reduction clause Key could collect one-half, appellants one-fourth and the other mineral owners one-fourth of the royalty. The reservation in the deed from Clark to Neely under which Key was acting in making the lease did not provide that any lease made should provide that the royalties should be paid to Neely, her heirs and assigns. There is no contention made by any of the parties that appellants are not entitled to their share of the royalties under the lease. In fact, under an agreement it is being held by the pipe line company, awaiting the outcome of this case. It is our opinion that it was not necessary to name appellants as parties being entitled to receive a portion of the royalties in order that their part of the minerals be covered by the lease. We hold that appellants, as a matter of law, were entitled to receive their proportionate share of the royalty under the terms of the lease and the trial court correctly entered judgment therefor.

Appellants excepted to the submission of special issue No. 8 inquiring whether Key acted in good faith when he executed the lease to Smith dated March 15, 1951, because there was no pleading authorizing the submission of this issue. The issue was raised by both the pleadings and evidence. The pleadings of appellants, when properly construed, charged that Key did not act in good faith when he executed the lease. There is evidence that authorized submission of the issue. Appellants lodged other exceptions to both the issue and the instruction defining "good cause." We have examined these exceptions and find no merit in them.

We have carefully examined all points of error raised by appellants and have concluded that reversible error is not shown in any of them and they are accordingly overruled.

The judgment is affirmed.