William P. MASSEY, Appellant,

v.

Waters S. DAVIS III et al., Appellees.

No. 11–82–266–CV.

Court of Appeals of Texas,
Eastland.

April 28, 1983.

Rehearing Denied May 19, 1983.

William G. Thompson, Thompson & Cook, Breckenridge, Frank Jennings, Jennings, Dies & Turner, Graham, for appellant.

Bob Hanna, Hanna, Bentley & Hanna, Abilene, James V. Hammett, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Glen Wilkerson, David Matlock, Clark, Thomas, Winters & Shapiro, Austin, Virgil T. Seaberry, Jr., Turner, Seaberry & Warford, Eastland, W.B. Wright, Jr., Wright & Wright, Cisco, for appellees.

DICKENSON, Justice.

This oil and gas case involves a dispute as to the ownership of the leasehold estate on a 640 acre tract of land.

The mineral owners[1] filed suit on May 23, 1974, for a declaratory judgment that earlier leases had expired under their own terms. Defendant[2] settled that case with the mineral owners on June 2, 1975; however, the mineral owners had previously executed a new oil and gas lease which is dated May 15, 1974. Intervenors[3] claim title under that lease and insist that their rights are not affected by the subsequent agreements between the mineral owners

---

1. The mineral owners are Waters S. Davis III, Jeremy S. Davis, Katherine Davis Gauss, Trustee, and David H. Gray, Trustee. They are sometimes called the "League Heirs." The surface owners are not involved in this litigation.

2. William P. Massey acquired the oil and gas leases which were executed in 1958 and 1964 and which terminated when production ceased for several months after the expiration of their primary terms.

3. George D. Harris was named as lessee, and on August 27, 1974, he retained an overriding royalty interest in his assignment of the lease to Chaparral Minerals, Inc. Precision Petroleum Corp. acquired certain rights in the lease under a "farm-out" agreement with Chaparral. These three parties will be referred to as intervenors.

and defendant. Following a trial by jury, judgment was rendered on July 14, 1982, that defendant's leases are terminated; that intervenors' lease is valid; that defendant pay certain intervenors $31,043.48 for oil and gas produced from October 1, 1975, through August 31, 1981; that defendant is a constructive trustee for payments after that date; and that defendant is entitled to a credit of $10,500 for the value of the casing in the well which is currently producing oil and gas. Defendant appeals. We modify the judgment to allow a credit of $20,000 for all of the equipment on the producing well, and as modified we affirm the judgment.

The trial court rendered judgment as a matter of law that defendant's leases terminated under their own provisions because production ceased for several months after the expiration of their primary terms. The verdict of the jury can be summarized as follows:

### Special Issue No. 1

Do you find from a preponderance of the evidence that in continuing production of the well on the League heirs land after October 1, 1975, William P. Massey (defendant) acted in good faith? Answer: *No.*

### Special Issue No. 2

Do you find from a preponderance of the evidence that on or before August 27, 1974, George D. Harris (the source of intervenors' title) knew such facts as would put a reasonably prudent person on inquiry as to the existence of a lawsuit styled Waters Davis III, et al vs. Earl B. Smith and William P. Massey, et al., Cause No. 26,397, in Eastland County, Texas? Answer: *We do not.*

### Special Issue No. 3

Do you find from a preponderance of the evidence that before acquiring an assignment to the Harris lease, Chaparral Minerals, Inc. (Intervenor) knew such facts as would put a reasonably prudent person on inquiry as to the existence of a lawsuit styled Waters Davis III, et al vs.

Earl B. Smith and William P. Massey, et al, Cause No. 26,397, in Eastland County, Texas? Answer: *We do not.*

### Special Issue No. 4

Do you find from a preponderance of the evidence that before commencing drilling of a well under the Harris lease, Precision Petroleum Corp. (Intervenor) knew such facts as would put a reasonably prudent person on inquiry as to the existence of a lawsuit styled Waters Davis III, et al vs. Earl B. Smith and William P. Massey, et al, Cause No. 26,397, in Eastland County, Texas? Answer: *We do not.*

We hold that the jury's answers to these special issues are not "so against the great weight and preponderance of the evidence as to be manifestly unjust." *In re King's Estate,* 244 S.W.2d 660 (Tex.1951).

Defendant has briefed six points of error. The first point claims the trial court erred in attempting to exercise further jurisdiction in this case after it was dismissed on October 12, 1979. This point is overruled.

This case was filed on May 23, 1974. After the interventions and cross actions were filed in 1976 and 1977, the lawsuit apparently became dormant. The retiring district judge signed an order which stated:

On the 12th day of October, 1979, it appearing to the Court that Plaintiff does not desire to prosecute the hereinafter styled and numbered causes (105 cases, including this one), and *after due notice having been given the various attorneys* of the Court's intention to dismiss the same, it is the order of this Court that the same are hereby dismissed for lack of prosecution, at Plaintiff's cost. (Emphasis added)

The new district judge signed an order of reinstatement on January 16, 1980, which recited:

(I)t has been brought to the Court's attention that the plaintiffs in the above styled and numbered cause *did not receive notice of the Court's intent to dismiss the above cause for lack of prosecu-*

tion, and that the same was dismissed on the 16th day of October, 1979;

Therefore, it is the order of the Court that the above case be reinstated on the docket of the 91st District Court of Eastland County, Texas.

The dismissal order and the reinstatement order appear to have been entered without notice to any of the parties or their attorneys. They were discovered when the transcript was prepared in connection with this appeal.

Defendant cites *Romack v. Champions Bank,* 610 S.W.2d 184 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), for the proposition that in order to reinstate the case more than 30 days after the order of dismissal was signed, compliance with Tex. R.Civ.P. 165a was required. *Romack* states:

> (T)his rule requires the process (reinstatement) to be initiated by a verified motion for reinstatement filed with the clerk of the court. Thereafter a copy of the motion must be served on each attorney of record and each party not represented by an attorney.... Since the order reinstating the case on the docket does not recite the filing of a motion and proper service, or the appearance of the parties or the attorneys at a hearing, we will not presume that there was a proper compliance with Rule 165a, supra.

*Romack* then held that the reinstatement order was improperly entered and that the subsequent judgment was void. We note that no cross actions or interventions were pending when the case against *Romack* was dismissed. See also *Clifton v. Haymes,* 608 S.W.2d 272 (Tex.Civ.App.—Eastland 1980, no writ).

Intervenors cite *Davis v. McCray Refrigerator Sales Corporation,* 136 Tex. 296, 150 S.W.2d 377 at 378 (Tex.1941), where Chief Justice Alexander states:

> The mere dismissal of plaintiff's suit did not have the effect of dismissing or otherwise disposing of the defendant's cross-actions.... (W)here the court dismisses plaintiff's suit, and does not refer to or mention the defendant's cross-action, the

judgment does not dispose of the cross-action expressly or by implication, and is not therefore such a final judgment as will authorize an appeal therefrom.

Intervenors also cite *Barrier v. Lowery,* 118 Tex. 227, 13 S.W.2d 688 (Tex.Comm'n App.1929, judgmt adopted), where the order of dismissal recited: "this cause ought to be dismissed for want of prosecution." That order did not mention the pending cross action, and the Commission of Appeals held:

> Where a cause in which the defendants have filed a cross-action is dismissed for want of prosecution, such dismissal does not operate to dismiss the cross-action, and it remains on the docket for trial.

■ Consequently, the retiring judge's order in this case was interlocutory because it did not dispose of all of the parties and issues which were pending before the court. The new district judge did not err in reinstating that cause of action. Moreover, all parties participated without objection in the subsequent trial on the merits. We hold that they were properly before the court.

■ This court's prior holding in *Atoka, Inc. v. Thornton,* 566 S.W.2d 686 (Tex.Civ. App.—Eastland 1978, no writ), is expressly overruled insofar as it holds that an order of dismissal for want of prosecution also disposes of the cross action by implication. The rule of *North East Independent School District v. Aldridge,* 400 S.W.2d 893 (Tex. 1966), is not applicable to orders of dismissal for want of prosecution where the case is not "regularly set for a conventional trial on the merits." 400 S.W.2d at 897. See also *Schlipf v. Exxon Corporation,* 644 S.W.2d 453 (Tex.1982), 4 McDonald, Texas Civil Practice secs. 17.18 and 17.19 (Rev. 1971), Annotation, 48 American Law Reports 2d 748 (1956).

■ Points two, three and four argue that the trial court erred in failing to hold that Intervenors were bound by the settlement agreements between defendant and the mineral owners. These points are overruled.

Since no "Lis Pendens" notice was filed pursuant to Tex.Rev.Civ.Stat.Ann. art. 6640 (Vernon 1969), the mineral owners had the power to make a valid oil and gas lease to George D. Harris on May 15, 1974, under the express provision in Tex.Rev.Civ.Stat. Ann. art. 6642 (Vernon 1969):

The pendency of such suit or action shall not prevent effective transfers or encumbrances of such real estate to a third party for a *valuable consideration and without other notice,* actual or constructive, by a party to the suit as against a subsequent decree for the adverse party *unless such notice shall have been properly filed* under the name of the party attempting to transfer or encumber in the county or counties in which said land is situated. (Emphasis added)

The jury found in favor of George D. Harris in its answer to special issue no. 2. The fact that defendant had some apparently abandoned equipment on the lease does not compel a finding of constructive notice. Lightning had damaged the separator, and the gas pipeline had been disconnected from the well for several months. The old leases terminated when production ceased after their primary terms, without any attempt to restore production within the 60 day period allowed by the leases. *Samano v. Sun Oil Company,* 621 S.W.2d 580 (Tex.1981).

After the execution of the Harris lease in 1974, the mineral owners and defendant could not defeat that valid lease by entering into their settlement agreements. The 1974 agreement permitted defendant to keep his leasehold equipment and referred to "an operating agreement with George D. Harris" under which "Harris would rework and operate said gas wells, to produce gas therefrom, using Equipment Owner's (defendant's) established surface and subsurface equipment and casings." The 1975 agreement purported to permit defendant to resume production under his old leases if he resumed production within 60 days after June 2, 1975. (The mineral owners thought the Harris lease had expired for nonpayment of the delay rental, but it was later

shown that the rental had been timely paid by Chaparral after its assignment from Harris.) Since the Harris lease is "prior in time" to the 1975 agreement, the Intervenors own the oil and gas leasehold estate on this property. We need not discuss the settlement agreement which the mineral owners and Massey made during the week prior to trial and which resolved the problems as between those parties.

■ The fifth point of error argues that the trial court erred in awarding Precision a judgment against Massey for the proceeds of oil and gas production after Massey's leases had terminated. This point is overruled. Intervenors were dispossessed by defendant; consequently, their lease was extended until the dispute was resolved. *Kothman v. Boley,* 158 Tex. 56, 308 S.W.2d 1 at 4 (Tex.1958); *Casey v. Western Oil and Gas, Inc.,* 611 S.W.2d 676 at 680 (Tex.Civ. App.—Eastland 1980, writ ref'd n.r.e.).

The last point of error argues that the trial court erred in allowing Massey an offset of only $10,500 for the casing, instead of $20,000 for all of the equipment on the leased premises. We sustain this point. Precision's live pleadings at the time of trial stated in Paragraph XIII that:

(U)pon final hearing hereof, Massey should be enjoined from removing any of said personal property for the reason that its removal, particularly of the casing located thereon, would destroy the well thereby creating economic waste, and that its value should be set off against the value of the production.

■ Precision stipulated in open court that: "the fair market value of the casing, tubing and surface equipment has been stipulated to be $20,000.00" and that the purpose of the stipulation was: "to avoid the question of the value being submitted to the jury."

The judgment of the trial court is modified so that paragraph (7) will now read:

■ That the defendant, William P. Massey, shall be entitled to a credit against said money judgment in the sum of $20,-000.00, same representing the value of

the casing, tubing and surface equipment currently being used in the production of oil and gas from said land;

As modified, the judgment of the trial court is affirmed.