DAY & CO., INC. and Bobby G. Day, Individually, Appellants,

v.

TEXLAND PETROLEUM, INC., Appellee.

No. 07–85–0268–CV.

Court of Appeals of Texas, Amarillo.

Aug. 29, 1986.

Rehearing Denied Oct. 15, 1986.

Second Rehearing Denied Nov. 5, 1986.

Thomas J. Griffith, Ralph H. Brock, Lubbock, for appellants.

Scott, Douglass & Luton, Frank Douglass and Carroll Martin, Austin, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellants Day & Co., Inc. and Bobby G. Day appeal from the trial court's order granting summary judgment in favor of appellee Texland Petroleum, Inc. and John Shoaf and his wife Genelda Shoaf. John Shoaf and his wife Genelda Shoaf have not participated in this appeal. Appellants originally filed suit seeking a declaratory judgment as to the ownership by Day & Co., Inc. of the leasing or executory rights under a certain deed. Upon joint motions for summary judgment, the trial court overruled appellants' motion for summary judgment and granted appellee's motion. We affirm the judgment of the trial court.

The material facts in this case are undisputed. By warranty deed dated January 22, 1974, Mildred Williams Keaton and Francell Williams Young conveyed to Day & Co., Inc. approximately eighty acres of land in the south part of the southwest quarter of Section 17, Block D–2, Lubbock County, Texas. The parties do not contest that, by way of this deed, the grantors reserved to themselves an undivided one-half interest in the minerals under that land and conveyed to Day & Co., Inc. "the power to execute any and all future leases for the development of said lands or any portion thereof, for oil, gas or other minerals, without the joinder of Grantors, their successors and assigns." The only limitation on this right to lease was that no lease was to be executed which provided for a royalty of less than one-eighth of the value of oil, gas, and other minerals covered by said lease or leases.

By a subsequent warranty deed dated March 11, 1974, Day & Co., Inc. conveyed the eastern ten acres of that tract to John F. Shoaf and his wife Genelda Shoaf. The deed "expressly excepted from this conveyance and reserved unto the Grantor herein, its successors and assigns forever, an undivided ¼ interest in and to all oil, gas and other minerals in, on, under and that may be produced from the herein conveyed property, an undivided ½ interest in and to said oil, gas and other minerals having been heretofore reserved."

On February 9, 1978, Day & Co., Inc. leased all eighty acres to John R. Stringer for a primary term of five years. On January 27, 1981, John and Genelda Shoaf, as

lessors, executed an oil and gas lease covering their ten-acre tract to John R. Stringer. On February 10, 1981, Day & Co., Inc. executed an oil and gas lease on the property previously covered by the February 9, 1978 lease to Bobby G. Day. Day & Co., Inc. contended it had the right to execute a new lease because the Stringer lease had terminated as to Keaton's and Young's undivided interest for failure to pay delay rentals to Mrs. Keaton and Mrs. Young until February 1981. The leases to John Stringer were ultimately assigned to Texland Petroleum, Inc. ("Texland") who drilled and completed the Texland-Rector & Shumacher John R. Shoaf Unit No. 1 well on February 23, 1983.

In five points of error, appellants contend that the trial court erred in granting appellee's motion for summary judgment and in overruling appellants' motion because (1) the Stringer lease conveying the Keaton and Young interest had expired by its own terms, and Day & Co., Inc. acquired the Keaton and Young interest by lease before there was any ratification of the expired Stringer lease; (2) the Shoafs "conveyed only their ¼ undivided mineral interest in the Shoaf tract," the Stringer lease covering the Keaton and Young interest had expired by its own terms, and "Day & Co., Inc. held the Keaton and Young mineral interest in the Shoaf tract by virtue of the Day lease;" (3) Day & Co., Inc. owned an undivided three-fourths interest in the executive rights of the Shoaf tract, so that Texland has no leasehold interest in three-fourths of the minerals under that tract; (4) Day & Co., Inc. owned or held by lease an undivided three-fourths interest in the mineral rights of the Shoaf tract, so that Texland has no leasehold interest in three-quarters of the minerals under that tract; and (5) alternatively, Day & Co., Inc., as owner of the executive rights to Keaton's and Young's interest, had a right to re-lease the Keaton and Young interest when it was forfeited under the Stringer lease or to lease that interest not covered by the Shoaf lease.

In its judgment, the trial court specifically held:

a. The executive rights in the easternmost ten acres of the S/2 of the SW/4 of Section 17, Block D–2, H.E. & W.T.R.R. Survey in Lubbock County, Texas ("the Shoaf tract") are owned as follows: a one-quarter (¼) undivided interest is held by Day & Co., a three-quarter (¾) undivided interest is held by John and Genelda Shoaf;

b. The lease from John and Genelda Shoaf ("Shoaf") to John R. Stringer dated January 27, 1981, recorded at Volume 49, Page 168 of the Oil, Gas and Mineral Lease Records of Lubbock County, Texas is valid and effective, and covers Shoaf's one-quarter (¼) undivided interest, Mildred Keaton's one-quarter (¼) undivided interest and Francell Young's one-quarter (¼) undivided interest in the Shoaf tract;

c. The lease from Day & Co. to John R. Stringer on the S/2 of the SW/4 of Section 17, Block D–2, H.E. & W.T.R.R. Co. Survey in Lubbock County, Texas dated February 9, 1978, recorded in Volume 42, Page 270 of the Oil, Gas and Mineral Lease Records, currently held by Texland Petroleum, Inc., is valid and effective as to one hundred percent (100%) of the mineral interests covered thereby in the S/2 of the SW/4 of Section 17, Block D–2, H.E. & W.T.R.R. Co. Survey, Lubbock County, Texas, more specifically described in the warranty deed from Mildred Keaton and Francell Young to Day & Co., Inc. dated January 22, 1974 and recorded at Volume 1373, Page 839 of the Deed Records of Lubbock County, Texas;

d. The lease from Day & Co. to Bobby G. Day dated February 10, 1981, recorded in Volume 49, Page 173 of the Oil, Gas and Mineral Lease Records of Lubbock County, Texas is invalid and ineffective.

Logical continuity requires us to first determine the ownership of the executive

rights in the eastern ten acres conveyed by warranty deed to the Shoafs. At the time Day & Co., Inc. executed the warranty deed to the ten acres to the Shoafs, it owned all the surface estate, one-half of the mineral interest, and all of the executive rights. With the execution of the deed, Day & Co., Inc. conveyed all the surface while excepting "an undivided ¼ interest in and to all the oil, gas and other minerals in, on, under and that may be produced from the herein conveyed property, an undivided ½ interest in and to said oil, gas and other minerals having been heretofore reserved."

Executive rights are one of several rights inuring to the mineral interest. *Elick v. Champlin Petroleum Co.*, 697 S.W.2d 1, 4 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Thus, when a severance occurs in the surface and mineral estates, these rights, absent some express designation otherwise, are part of the mineral estate. *Houston v. Moore Investment Co.*, 559 S.W.2d 850, 852 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ). Since the deed from Day & Co., Inc. to the Shoafs is silent as to the executive rights, those rights inured one-quarter to the quarter mineral interest retained by Day & Co., Inc. and one-quarter to the quarter interest granted to the Shoafs. Thus, the issue for our specific determination is whether the executive rights as to the Keaton and Young one-half mineral interest were granted with the surface to the Shoafs or were retained by Day & Co., Inc., absent any express designation in the deed.

The parties do not contend that the conveyance is ambiguous nor did they claim at the time of the summary judgment hearing that there were material issues of fact for resolution. Thus, we must follow the rule that the intent of the parties, as expressed in the language used in the deed, is to be ascertained and given effect and it is assumed that the parties intend every clause to have effect in evidencing their agreement. *Alford v. Krum*, 671 S.W.2d 870, 872 (Tex.1984). The intent of the parties must be determined from the four cor-

ners of the deed, *Peveto v. Starkey*, 645 S.W.2d 770, 772 (Tex.1982), and the court, when possible, will harmonize the parts so none of the provisions are rendered meaningless. *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620 (1954).

An owner of minerals has several distinct rights: (1) the right to participate in bonuses, rentals, and royalties, (2) the right to lease the land for oil and gas development, and (3) the exclusive right to enter the premises for the purposes of drilling. *Elick v. Champlin Petroleum Co.*, 697 S.W.2d at 4. The owner of minerals may convey, or reserve in his conveyance, all or any part of his interest or rights in the minerals. *Schlittler v. Smith*, 128 Tex. 628, 101 S.W.2d 543, 544 (Tex.1937).

In *Allison v. Smith*, 278 S.W.2d 940 (Tex.Civ.App.—Eastland 1955, writ ref'd n.r.e.), Bertha Clark had previously conveyed to Neely a one-half mineral interest in a certain tract of land and had retained the executive rights. She then conveyed half of the tract to Key. The mineral interest previously conveyed to Neely was subsequently assigned to other parties. Then Key, acting pursuant to the power reserved to Bertha Clark, executed an oil and gas lease. One of the assignees of the previously conveyed one-half mineral interest challenged Key's right to execute the lease on his behalf. The Court held that by the deed from Clark to Neely, Clark reserved the exclusive right to execute oil and gas leases and that Key, as her assignee, succeeded to those rights. *Id.* at 945. The right to execute leases in that case, and in other earlier cases, was held to be a power coupled with an interest and not revocable at will. *Id. See Superior Oil Co. v. Stanolind Oil & Gas Co.*, 230 S.W.2d 346, 352 (Tex.Civ.App.—Eastland 1950), *aff'd*, 240 S.W.2d 281 (Tex.1951); *Odstrcil v. McGlaun*, 230 S.W.2d 353, 354 (Tex.Civ. App.—Eastland 1950, no writ).

Subsequently, in *Pan American Petroleum Corp. v. Cain*, 163 Tex. 323, 355 S.W.2d 506 (Tex.1962), the Texas Supreme Court characterized the executive right as not being a power coupled with an interest

in the classic sense but as being more nearly analogous to a power given by way of security. *Id.* at 508. However, the issue in that case was one of whether the power to lease as reserved in a mineral deed could be exercised by the heirs of the grantor after his death. The Court held that the executive right terminated with the death of the original holder. In making that holding, the Court significantly commented that that was so "unless there is something to indicate that the parties intended that the power should survive and be exercised by others." As an example of terminology that would show that intention, the Court noted the holding in *Stone v. Texoma Production Co.*, 336 P.2d 1099, 1101 (Okla.1959). In that case, the executive right was reserved "to the grantor, his heirs, executors, administrators and assigns." The Court held that this language was sufficient to show a right of assignment of the executive interest. *Id.* That reasoning is applicable to the analogous situation presented in this case.

In the warranty deed from Mildred Keaton and Francell Young to Day & Co., Inc., the executive right is conveyed to "Grantee, its successors and assigns." This is a clear indication that it was intended to be assignable and might be exercised by someone other than Day & Co., Inc. and was not a right personal only to the grantee. Regardless of the terminology used to describe this executive right, it is so significantly and intimately connected with the mineral estate as to be within the general rule that a warranty deed passes all the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed. *Cockrell v. Texas Gulf Sulphur Company*, 157 Tex. 10, 299 S.W.2d 672, 675 (Tex.1956). The deed in question here evidences no intent that the executive right should not pass to a subsequent grantee. When Day & Co., Inc. conveyed the ten-acre tract to the Shoafs by warranty deed, it reserved to itself only an undivided one-fourth mineral interest. Therefore, all its other rights, titles, and interests, including the executive rights, passed to the Shoafs.

In support of appellants' contentions that they did retain the executive right in question, they cite us to *Martin v. Snuggs*, 302 S.W.2d 676 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.) and *O'Daniel v. Roth*, 320 S.W.2d 51 (Tex.Civ.App.—El Paso 1958, no writ). These cases are distinguishable. In *Snuggs*, one Frost conveyed land to Martin reserving an "undivided one-half interest in and to all oil and mineral rights in and under the land described herein," with the provision that "the Grantor shall not participate in the cash bonus or cash rentals paid for drilling or delay payments." Snuggs later acquired title to one-half of that reserved interest. The question for resolution was whether the language in the original deed gave the grantee the exclusive right to execute oil, gas, and mining leases. The Court held that where mineral rights are reserved, the executive rights to that interest are implicitly reserved as well unless the deed shows on its face that the executive rights are conveyed. That is not the question before us. In this case, there is no issue as to whether the executive right was separated from the mineral interest reserved to Keaton and Young and that executive right conveyed to Day & Co., Inc. The question for our decision is whether that right passed by a subsequent deed silent as to any attempted reservation of the right. The reference in the deed to Day & Co., Inc. to an "undivided one-half (½) interest heretofore reserved" was not a current reservation, but a reference to an already existing outstanding interest.

In *O'Daniel*, the issue was whether a certain deed conveyed a royalty or a mineral interest. A question also arose as to whether a bare leasing right to a royalty interest could be maintained without some other interest in the land. Those questions are not before this Court because the deeds are clear that a mineral interest, not a royalty interest, in the subject land was retained.

Since the Shoafs held the executive rights as to their own one-fourth mineral interest and the executive rights to the Keaton and Young one-half mineral interest, the lease they executed to John R. Stringer dated January 27, 1981 is valid and effective as to those interests in the ten-acre tract.

Appellants next argue that the lease from Day & Co., Inc. to John Stringer dated February 9, 1978, by which it exercised its rights to lease on behalf of Keaton and Young, terminated by its own terms as to Keaton's and Young's undivided one-half interest because delay rentals were not paid to Keaton and Young until February 1981. Appellants then claim that because Day & Co., Inc. owned the executive rights on that tract, it was empowered to re-lease the property to Bobby G. Day. As we have previously discussed, Day & Co., Inc. did not own the Keaton and Young leasing rights to the Shoafs' ten acres and therefore our discussion will be in reference only to the remainder of the tract.

 Consideration of this argument requires us to note the reference in appellants' original brief that "[p]ursuant to an agreement between parties, only deposition references called to the trial court's attention in the summary judgment proceedings will be relied upon on appeal." No such agreement appears in this record. Therefore, we have examined and considered the depositions of R.J. Schumacher, Francell Williams Young, Mildred Keaton, and Bobby G. Day which were included in the record on appeal and incorporated by reference in appellee's supplemental motion for summary judgment and response to appellants' motion for summary judgment.

Day & Co., Inc. received annual delay rentals from the lessee in the amount of $34.81 on a timely basis. Mrs. Young and Mrs. Keaton testified in deposition that they had not received any delay rentals until February of 1981. On February 10, 1981, an oil and gas lease from Bobby G. Day, as lessor, to Day & Co., Inc., as lessee, covering the Keaton and Young tract was executed and recorded on Febru-

ary 11, 1981. On February 13, 1981, Mrs. Keaton executed a Ratification and Rental Division Order on both the Stringer lease and the Shoaf lease and, on February 17, 1981, Mrs. Young did the same. All those documents were recorded on March 4, 1981. On February 20, 1981, an oil and gas lease from Day & Co., Inc., as lessor, to Bobby G. Day, as lessee, and covering the Keaton and Young tract, was filed for record. That lease contained the following typed provision:

This lease is being refiled to correct an error in the description of the parties wherein Bobby G. Day was shown as Lessor and Day & Co., Inc. as Lessee, wherein, in truth and fact, Day & Co., Inc. is Lessor and Bobby G. Day is Lessee.

Appellee contends that the ratification by Keaton and Young was ineffective since the property was already re-leased to Bobby G. Day.

 A lease that has expired for failure to pay delay rentals can be effectively revived by the acceptance of late rentals. *Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219, 222 (Tex.1977); *Mitchell v. Simms*, 63 S.W.2d 371, 373 (Tex.Crim.App.1933, holding approved). However, the execution of a valid lease during the interim period between the expiration of the lease and its revival by the Keaton and Young ratifications would have been valid. *See Massey v. Davis*, 650 S.W.2d 551, 555 (Tex.App.—Eastland 1983, writ ref'd n.r.e.).

 It is axiomatic that a grantor cannot convey to a grantee a greater or better title than he holds. *Cox v. Gutman*, 575 S.W.2d 661, 664 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Collum v. Neuhoff*, 507 S.W.2d 920, 923 (Tex.Civ.App. —Dallas 1974, no writ). Thus, a deed conveys nothing where no title rests in the grantor. *Isbell v. Isbell*, 387 S.W.2d 456, 460 (Tex.Civ.App.—Texarkana), *rev'd on other grounds*, 395 S.W.2d 825 (Tex.1965). Since Bobby Day did not own any interest in the oil and gas rights in the premises, he

could not convey any of those rights and the lease executed by him was a nullity. Therefore, at the times February 13 and 17, 1981, respectively, when Keaton and Young ratified the Stringer lease, there was no valid intervening lease.

Appellants point out, however, that the oil and gas lease from Day & Co., Inc. in favor of Bobby G. Day, showing the proper conveyance as to lessor and lessee, was recorded February 20, 1981, prior to the recordation of the ratifications on March 4, 1981. Therefore, they say, being unrecorded, and thus, they reason, void as to appellants, the ratification did not cut off Day & Co.'s right to re-lease the Keaton and Young interest. In support of this proposition, they place primary reliance upon Tex. Prop.Code Ann. § 13.001(a) (Vernon 1984) and the Court's decision in *Gas Ridge v. Suburban Agricultural Properties,* 150 F.2d 363 (5th Cir.1945), *cert. denied,* 326 U.S. 796, 66 S.Ct. 487, 90 L.Ed. 485 (1946). We do not believe these authorities support their proposition, and our discussion will require a recap of pertinent evidence.

Section 13.001 provides that the conveyance of an interest in real property is void as to a subsequent purchase for a valuable consideration without notice unless the instrument has been filed for record. Bobby Day and his wife are the sole stockholders in Day & Co., Inc. Mr. Day is president of the corporation and runs the day-to-day business of that corporation. He is the individual who decides whether any interest in oil and gas property is taken in his name or in Day & Co., Inc.'s name. Mr. Day said that he heard that John Stringer was trying to get some leases about December and he "assumed that they had failed to pay the delay rentals, or he wouldn't be out there leasing," and "I leased it to Bobby Day assuming that." He said he did not know for sure that the delay rentals had not been paid to Keaton and Young until Mrs. Keaton told him after the lease from Day & Co., Inc. to him was recorded. Mrs. Young testified by deposition that she was not contacted at the time the Stringer lease was executed and she had not received any payment of any kind

until the payment she received at the time of the execution of the ratification agreement. Mrs. Keaton said that the first time she learned anyone was leasing the land for oil and gas purposes was when she was contacted by a man named Lawrence Green, who was hired by John Stringer to locate her. This happened around February 1981.

Under this record, it appears that Day & Co., Inc. did not inform either Mrs. Keaton or Mrs. Young it had executed a lease covering their mineral rights and that they, Keaton and Young, had a right to the receipt of the rentals. Then, several years later, at a time when the chief executive officer of the corporation assumed, but did not know, that the Keaton and Young delay rentals had not been paid, without attempting to contact either Keaton or Young to ascertain if the delay rentals had not been paid, the corporation attempted to lease that interest to its chief executive officer. The lease in question was executed for the lessor by Mr. Day, as its president, and by himself, individually, as lessee.

To claim the benefit of article 13.001, an entity must be a "purchaser for a valuable consideration without notice," *i.e.,* a bona fide purchaser. Classically, the necessary elements to such a classification are payment of valuable consideration, absence of notice, and good faith. *Strong v. Strong,* 128 Tex. 470, 98 S.W.2d 346, 347 (1936); *Houston Oil Co. of Texas v. Hayden,* 104 Tex. 175, 135 S.W. 1149, 1152 (1911).

█ Moreover, we must note that the holder of the executive right owes the duty of utmost good faith to the non-executive mineral owner. *Manges v. Guerra,* 673 S.W.2d 180, 183 (Tex.1984). In *Andretta v. West,* 415 S.W.2d 638, 641 (Tex.1967), the holder of the executive right amended the lease without notice to the owner of a non-participating royalty interest. In its discussion of the obligations of the holders of an executive right, the Court made the following observation:

[T]he owner of a non-participating royalty interest would not ordinarily learn of such an arrangement unless he was advised by one of the parties. When we consider the power entrusted to respondents and their superior knowledge, it is clear to us that they were in a confidential relationship with petitioner in so far as the lease amendment and payment thereunder are concerned.

... If they knew the name and whereabouts of the royalty owner, it was their duty to notify him of the lease amendment and account to him for his share of the payments received.

That statement of the court is applicable to the duty of appellant in this case.

 Under the facts of this case, we think it is clear that Bobby G. Day was not a bona fide purchaser without notice entitled to claim the benefit of article 13.001. That being the case, the acceptance of delay rentals and execution of the Ratification and Rental Division Orders by Keaton and Young was sufficient to revive the Stringer lease.

In summary, all of appellant's points of error are overruled and the judgment of the trial court affirmed.

## ON MOTION FOR REHEARING

In three points, appellants challenge the opinion of the Court in this cause. They assert we erred in holding (1) that the executive right to the Keaton and Young one-half mineral interest passed to the Shoafs by warranty deed because that executive right is not such an interest that passes under such a deed absent reservation or exception; (2) that the acceptance of the delay rentals and execution of the ratification and rental division orders by Keaton and Young were sufficient to revive the Stringer lease covering that interest because that lease had expired and Day & Co., Inc. had leased the Keaton and Young interest, without notice of the ratification, before recordation of the ratification; and (3) that Bobby G. Day was not a bona fide purchaser without notice because Texland

did not plead that issue as a basis of summary judgment relief.

 For the reasons previously set out in our original opinion, we continue to believe our holding with relation to the matters set out in appellants' first two contentions is correct and overrule those contentions. With relation to appellants' third contention, they correctly point out that in order to be entitled to a summary judgment, a prevailing party must establish a right thereto as a matter of law and that it is entitled to the judgment by reason of the matters set out in summary judgment pleadings. *Durham v. Cannan Communications, Inc.*, 645 S.W.2d 845, 852 (Tex.App.—Amarillo 1982, writ dism'd); *Clear Creek Basin Authority v. City of Houston*, 573 S.W.2d 839, 841 (Tex.Civ. App.—Houston [1st Dist.] 1978), *rev'd on other grounds*, 589 S.W.2d 671 (Tex.1979). In appellee's supplemental motion and response, it specifically alleged that Keaton and Young ratified the original oil and gas lease in favor of Stringer, that the Stringer lease was therefore valid, and that Day & Co., Inc.'s lease to Bobby G. Day and subsequent extensions of that lease were invalid because they violated a fiduciary duty owed Keaton and Young. This pleading is sufficient to raise the issue at summary judgment as to whether Bobby G. Day was entitled to the benefit of Tex.Prop.Code Ann. § 13.001(a) (Vernon 1984). In order to claim that benefit, an entity must be denominated as a "purchaser for a valuable consideration without notice" or an "innocent purchaser." The requisites for those classifications, as we have noted, are the payment of valuable consideration, absence of notice, and good faith. *Strong v. Strong*, 128 Tex. 470, 98 S.W.2d 346, 347 (1936); *Houston Oil Co. of Texas v. Hayden*, 104 Tex. 175, 135 S.W. 1149, 1152 (1911). The uncontroverted summary judgment record sufficiently establishes that appellants were not entitled to the benefit of section 13.001(a). Appellants' motion for rehearing is overruled.