

# COURT OF APPEALS

# EIGHTH DISTRICT OF TEXAS

# EL PASO, TEXAS

---

No. 08-24-00065-CV

---

Kevin F. Karli, James W. Dobbs, Margaret E. Dobbs, Henry C. McQuaide, III,
Chris H. Hoegemeyer, Kyle W. Hoegemeyer, William H. Hoegemeyer II,
Sam Wigington, III, Justin T. Price, Robert Hugh Williams,
Gwendolyn S. Williams, Stephanie R. Saculla, John Cody Saculla,
Patrick Clarke, Kathryn E. Clarke, and Mary Catherine Davis,
Independent Executrix of the Estate of Joe R. Davis, Appellants

v.

Claude Wilson, Mary Claudene Brewer, Arleigh P. Helfer,
Melany Rae Helfer-Hullett, Wendi Rene Hughes, Karen Sue Schaible,
John Weldon Allums, Alvin Reese Helfer and Jason Reed Helfer, Appellees

---

On Appeal from the 472nd District Court
Brazos County, Texas
Trial Court No. 22-000428-CV-472

# MEMORANDUM OPINION[1]

This case concerns the proper interpretation of a reservation clause of an oil-and-gas deed wherein the clause includes inconsistent language about the rights reserved by two grantors and the fractional share of the rights. The first part of the clause expressly reserves a 1/32 interest in "minerals" for each grantor, its middle part excludes their participation in bonus and rentals, and the final part concludes with a statement of the grantors intention to reserve a 1/4 "non-participating interest in the customary one-eighth royalty." The grantors' and grantee's successors dispute whether the reserved interests are bare royalty interests or interests in the mineral estate stripped of rights to bonus and delay rentals but including executive and development rights. They also disagree on whether the reserved interests include 1/4 or 1/32 of the respective lease royalties. We hold that each grantor reserved a 1/4 mineral interest stripped of all rights except for the right to royalty payments equal to 1/4 of the lease royalty. Accordingly, we affirm in part and reverse in part the trial court's judgment.

## I. BACKGROUND

### A. The 1950 deed

In 1950, grantors C. R. Wilson, joined by his wife, Verney Wilson, and Mary Ida Wilson Allums, joined by her husband, W. F. Allums, executed a warranty deed conveying title to 196.7 acres of Brazos County land to grantee, the Veteran's Land Board of Texas, while also reserving in the deed the following interests:

> SAVE AND EXCEPT, however, there is reserved and retained by C. R. Wilson an
> undivided one-thirty second right, title and interest in and to all oil, gas and other

---

[1] This case was transferred from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001. We apply the precedent of the Tenth Court of Appeals to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

minerals in and under said lands or that may be produced or saved from said lands, and there is reserved and retained unto Mary Ida Wilson Allums an undivided one-thirty-second right, title and interest in and to the oil, gas and other minerals in and under said lands or that may be produced or saved from said lands; provided, however, that the said C. R. Wilson and Mary Ida Wilson Allums shall not be entitled to receive any rental or bonus moneys paid for leases, and it being the intention to reserve unto the said C.R. Wilson a one-fourth non-participating interest in the customary one-eighth royalty and unto the said Mary Ida Wilson Allums a one-fourth nonparticipating interest in the customary one-eighth royalty.

Appellants (the Karli Successors[2]) are certain of the successors-in-interest to the grantee, the Veteran's Land Board of Texas, while Appellees (the Wilson Successors [3]) are the successors-in-interest to grantors, C.R. Wilson and Mary Ida Wilson Allums.

## B. Leasing and development

More than half a century after the deed was executed, Wildfire Energy Operating, LLC, obtained oil and gas leases from the Karli Successors. The leases provided for lessor's royalties above the "customary one-eighth," ranging between 3/16 and 1/4. After drilling multiple wells, Wildfire sought to confirm each interest-owner's royalty share, asking parties from both sides to execute a royalty interest agreement stating that the successors of the grantors (the Wilson Successors) reserved "a perpetual 1/2 of royalty that would change depending on the underlying royalty of the oil & gas lease." Although some successor-owners agreed, others did not.[4]

---

[2] The successors-in-interest of the Veteran's Land Board include Appellees Kevin F. Karli, James W. Dobbs, Margaret E. Dobbs, Henry C. McQuaide, III, Chris H. Hoegemeyer, Kyle W. Hoegemeyer, William H. Hoegemeyer II, Sam Wigington, III, Justin T. Price, Robert Hugh Williams, Gwendolyn S. Williams, Stephanie R. Saculla, John Cody Saculla, Patrick Clarke, Kathryn E. Clark, Martha Jones, and Joe R. Davis.

[3] The successors-in-interest of C.R. Wilson and Mary Ida Wilson Allums are Appellants Claude Wilson, Mary Claudene Brewer, Arleigh P. Helfer, Melany Rae Helfer-Hullett, Wendi Rene Hughes, Karen Sue Schaible, John Weldo Allums, Alvin Reese Helfer and Jason Reed Helfer are successors of C.R. Wilson and Mary Ida Wilson Allums.

[4] Among the Karli Successors, two signed the Royalty Interest Agreement and thus they were not included in the underlying suit.

## C. Procedural history

The Wilson Successors filed suit against the Karli Successors in which they sought a judgment declaring their ownership of non-participating royalty interests entitling them to payment of 1/2 of the leases' royalties, collectively, or representing 1/4 to each grantor. The suit also included a trespass-to-try-title claim and asked for attorney's fees and costs. Responding, the Karli Successors filed general denials and not guilty pleas to the trespass-to-try-title action.

Consistent with their petition, the Wilson Successors soon filed an amended motion for summary judgment, arguing the 1950 deed reserved a 1/4 non-participating royalty interest in the respective lease royalties for the heirs and assigns of C.R. Wilson and a like interest for the heirs and assigns of Mary Ida Wilson Allums; or, alternatively, they contended that the deed reserved a 1/4 non-participating *mineral* interest to the heirs and assigns of C.R. Wilson and a like interest to the heirs and assigns of May Ida Wilson Allums. The Karli Successors filed a competing motion for summary judgment, contending the deed's grantors each reserved a 1/32 mineral interest stripped of the rights to bonus and rentals. In other words, they argued that each grantor reserved a 1/32 (or collective 1/16) interest in the mineral estate "inclusive of the rights attributable to [grantors'] fractional interest in the executive right, the royalty right and the right to self-develop."

The trial court granted the Wilson Successors' motion for summary judgment and denied the Karli Successors' competing motion, declaring that the Wilson Successors own a non-participating royalty interest in the amount of 1/4 of the respective lease royalties for the current and any future leases for the heirs of C.R. Wilson and a 1/4 of the respective lease royalties for the current and any future leases for the heirs of Mary Ida Wilson Allums. The trial court denied all other relief.[5]

---

[5] We take this to mean that the trial court denied the trespass-to-try-title claim and the request for attorney's fees. The parties do not address these issues on appeal.

This appeal followed.

## II. STANDARD OF REVIEW

A traditional motion for summary judgment is properly granted when the movant establishes, through competent summary judgment evidence, that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When both sides file competing motions and the trial court grants one and denies the other, the non-prevailing party may appeal both rulings. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996). In such case, the reviewing court considers the evidence presented by both sides, decides all questions presented, and renders the judgment the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

## III. ISSUES

Contending the trial court erred, the Karli Successors present the following two issues on appeal: (1) What was the nature of the interest reserved by the 1950 deed; and (2) What is the fractional share of production or royalty payments reserved. Because the two issues center on a proper interpretation of the deed's reservation, we address them together.

## IV. THE RESERVED INTERESTS

The Karli Successors argue the deed reserved for each grantor a 1/32 mineral interest stripped of their right to receive bonus and rentals but retaining their right to executive, development, and royalty rights. Countering, the Wilson Successors claim their predecessor-grantors each reserved a 1/4 non-participating royalty interest for all current and future leases. In other words, the parties first dispute the nature of the reserved interests—specifically, whether it included executive and development rights. And second, although the parties agree the reserved-interests include royalty rights, they dispute whether the fractional size of those rights amount to

5

1/32 of royalty to each grantor (amounting to a collective 1/16), or 1/4 to each (amounting to a collective 1/2).

To resolve these questions, we follow a four-step approach. First, we outline governing principles to include our established deed-construction principles, the bundle of rights comprising the mineral estate, and the presumptions applicable when a deed is silent as to a particular right. Second, we identify the parties' contentions as to each right. Third, we review the deed's reservation language, part by part, giving due consideration to apparent inconsistencies. Fourth and finally, we harmonize the reservation's language to give effect to all its provisions. Based on this approach, we conclude the deed reserved to each grantor a 1/4 (or collective 1/2) mineral interest stripped of all rights except for a right to payment of 1/4 (or collective 1/2) of the respective lease royalties.

## A. Governing principles

No party here contends the deed is ambiguous. The construction of an unambiguous deed is a question of law. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The "primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Id*. "Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions." *Id*. To determine the plain meaning of older mineral deeds, courts consider what deed language could reasonably have meant to an informed but disinterested speaker at the time the deed was executed. *Van Dyke v. Navigator Grp.*, 668 S.W.3d 353, 362 (Tex. 2023). Contemporary caselaw, dictionaries, and scholarly commentary may be consulted to illuminate historical usage. *Id.* Expert opinions have a "proper (if confined) role," but courts do not rely on expert testimony to interpret common oil-and-gas terms. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 170

6

(Tex. 2009). Courts must also avoid interpretations that produce absurd results. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022).

As relevant here, mineral deeds are "subject to special construction rules that apply particularly to agreements governing property rights." *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 595 (Tex. 2018). In recent years, the Texas Supreme Court has clarified these principles by "incrementally cast[ing] off rigid, mechanical rules" in favor of ordinary contract principles like the four-corners rule and the plain-meaning rule, *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744, 746 (Tex. 2020), while still recognizing that traditional oil-and-gas terminology—to include terms such as "royalty," "non-participating royalty interest," "bonus," and "rentals"—carry well-settled meanings. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995); *Schlittler v. Smith*, 101 S.W.2d 543, 544 (Tex. [Comm'n Op.] 1937). That is, the question of whether deed language creates or reserves an interest that implies certain rights is governed by real property and oil-and-gas law rather than general contract principles. *Day & Co., Inc. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 669 (Tex. 1990).

It is long-settled in Texas law that a landowner may sever the mineral estate from the surface and may further subdivide the mineral estate's component rights. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). The mineral estate consists of five severable rights: (1) the right to develop; (2) the right to lease—which is also known as the executive right; (3) the right to receive bonus payments; (4) the right to receive royalty payments; and (5) the right to receive delay rentals. *Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016).

Presumptions apply when a deed is silent as to particular rights in the mineral estate. Absent contrary language, when an undivided mineral interest (or fraction thereof) is reserved, it is presumed that component rights remain with the mineral interest estate. *Day & Co.*, 786 S.W.2d

7

at 669 n.1. Thus, "when a mineral interest is reserved or excepted in a deed, the executive right covering that interest is also retained unless specifically conveyed." *Id*.; *see also French v. Chevron U.S.A. Inc.*, 896 S.W.2d 797 n.1 (Tex. 1995). Where deeds blend terminology—such as by granting or reserving an interest in "minerals," expressly including an interest in "royalty," and excluding one or more other rights—the Supreme Court has treated the resulting interest as a "stripped" mineral estate carrying all other unmentioned rights. *French*, 896 S.W.2d at 798. But in other cases, the Court explained that the interest conveyed or reserved under such a deed is "to be determined from all the provisions of the instrument" and courts should not give disproportionate weight to initial "mineral" language. *Temple-Inland Forest Products Corp. v. Henderson Family P'ship, Ltd.*, 958 S.W.2d 183, 185–86 (Tex. 1997); *see also Luckel*, 819 S.W.2d at 462, 463 (holding that courts must attempt to harmonize all parts of the deed, construing the instrument to give effect to all of its provisions).

Lastly, a presumption based on the use of historic lease terms and drafting practices governs the interpretation of fractional interests in oil-and-gas deeds of a certain era unless otherwise defined in the text. *Van Dyke*, 668 S.W.3d at 361. Thus, in construing multiple-fraction deeds, courts presume that a reference to "1/8" reflects the entire mineral estate in fee simple determinable with the possibility of reverter of the entire estate—the historic "estate-misconception theory"—so an interest stated as a double fraction such as "1/2 of 1/8" is ordinarily read as "1/2" or the first fraction alone. *Id*. A variation of the presumption that is relevant to this case occurs when a multiple of 1/8 (such as 1/32) appears in the initial clause that describes the interest and reappears as a double fraction in a subsequent clause (1/4 of 1/8). *Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 460 (Tex. 1998). The presumption is "readily and genuinely rebuttable," *Van Dyke*, 668 S.W.3d at 359, and courts must read the deed as a whole to

8

determine whether its text indicates a different intent—particularly where a double fraction is accompanied by a third fraction. *Hysaw*, 483 S.W.3d at 12 n.14.

## B. The parties' arguments

The Karli Successors assert the deed reserved to each of the grantors a 1/32 mineral interest, including executive and development rights but not bonus or rentals, leaving the parties as "cotenants of the mineral estate." The chart below illustrates how the grantors' and grantee's rights would be divided under the Karli Successors' point of view:

| The Karli Successors' proposed interpretation | | | | | |
|---|---|---|---|---|---|
| **Interest Owner** | **Right to Develop** | **Executive Right** | **Right to Bonus** | **Right to Royalty** | **Right to Rentals** |
| C.R. Wilson (Grantor - 1) | 1/32 | 1/32 | 0 | 1/32 | 0 |
| Mary Wilson Allums (Grantor-2) | 1/32 | 1/32 | 0 | 1/32 | 0 |
| Grantee | 15/16 | 15/16 | 8/8 | 15/16 | 8/8 |

The Karli Successors further argue that the fractional interest in executive and development rights entitled the Wilson Successors to "(1) participate as a cotenant in drilling wells; (2) be a non-developing cotenant and receive their full collective 1/16th royalty derived from their mineral interest share after payout of the wells; (3) lease their mineral interest and receive their collective 1/16th share of the royalty they themselves reserved in their negotiated oil and gas lease(s); or (4) ratify the lease(s) signed by their 15/16th mineral cotenants and receive their 1/16th share of the royalty reserved in the reservation in the Deed."

The Wilson Successors respond that the trial judge correctly declared the grantors' interests to consist of a collective 1/2 non-participating royalty interest without executive and development rights, as summarized in the following chart.

9

| The Wilson Successors' proposed interpretation | | | | | |
|---|---|---|---|---|---|
| Owner | Right to Develop | Executive Right | Right to Bonus | Right to Royalty | Right to Rentals |
| C.R. Wilson (Grantor-1) | 0 | 0 | 0 | 1/4 | 0 |
| Mary Wilson Allums (Grantor-2) | 0 | 0 | 0 | 1/4 | 0 |
| Grantee | 8/8 | 8/8 | 8/8 | 1/2 | 8/8 |

## C. The 1950 deed

With the governing principles and the parties' arguments in mind, we proceed to construe the entirety of the 1950 deed to determine the rights reserved by the grantors, C.R. Wilson and Mary Ida Wilson Allums.

### (1) The grantors' reservation

The deed's reservation appears in a lengthy sentence following the grantors' conveyance of "all that certain 196.7 acres of land." To aid our discussion, we note the reservation is easily divisible into three portions.

### (a) The first portion

The first portion provides:

SAVE AND EXCEPT, however, there is reserved and retained by C. R. Wilson an undivided one-thirty-second right, title and interest in and to all oil, gas and other minerals in and under said lands or that may be produced or saved from said lands, and there is reserved and retained unto Mary Ida Wilson Allums an undivided one-thirty-second right, title and interest in and to all oil, gas and other minerals in and under said lands or that may be produced or saved from said lands;

This first portion includes language providing for a reservation of a certain fractional interest to C.R. Wilson and an identical interest to Mary Ida Wilson Allums. Specifically, the text reserves and retains "an undivided one-thirty-second" interest to each of the named grantors. When

10

expressed collectively, the reserved interest to both grantors amounts to a 1/16 fractional interest, and when expressed individually, it amounts to a 1/32 interest to each.

As for the rights reserved to the grantors, we focus on two specific phrases in this portion of the reservation. First, we agree with the Karli Successors that the phrase "interest in and to all oil, gas and other minerals in and under said lands," when read in isolation, is sufficient to create an interest in the full mineral estate. *See Temple-Inland*, 958 S.W.2d at 185–86. But additional wording following that phrase introduces an apparent inconsistency in the text. The text continues: "or that may be produced or saved from said lands." Bringing both phrases together, particularly the words "in and under" and "produced or saved," is an "odd" combination though it is often found in older deeds. 1 Williams & Meyers, Oil & Gas Law § 304 (2024). The combined phrase is generally construed to reserve a mineral interest, at least when joined by the conjunction, "and," as it indicates a connection of items within the same class or type. *See id.*; Merriam-Webster's Collegiate Dictionary (11th ed. 2003); *Altman*, 712 S.W.2d at 117–18 ("in and under and that may be produced," standing alone, sufficient to establish a mineral interest).

But here, the first portion of the reservation clause reads a bit differently, providing for reservation of a fractional share of "minerals in and under said lands *or* that may be produced *or* saved." (Emphasis added). Because the deed uses "or" instead of "and," we pause to consider whether there is a distinction with the deed's use of that term. Even though the "and" variation often appears in mineral deeds, the disjunctive "or" has appeared in royalty deeds containing express royalty language.[6] This makes grammatical sense, as a royalty interest is an "interest in

---

[6] *See, e.g.*, *Myers-Woodward, LLC v. Underground Services Markham, LLC*, 716 S.W.3d 461, 472 (Tex. 2025) (reservation of "royalty of 1/8 of . . . minerals in, on, or under, or that may be produced" in a 1947 deed reservation, noting "the royalty clause at issue does not appear to be particularly unusual"); *Hysaw*, 483 S.W.3d at 5 (reservation of "minerals in or under or that may be produced from any of said lands, the same being a non-participating royalty interest"); *Averyt v. Grande, Inc.*, 717 S.W.2d 891, 898 (Tex. 1986) (reservation of "royalty covering . . . minerals in,

gross production," *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 75 (Tex. 2015), which may be described either as an interest in minerals that "may be produced" or as an interest in the same minerals "in and under the land" at the time of the deed. *See Plainsman*, 898 S.W.2d at 790 (noting that "one principle should be immutable: a non-participating royalty is an interest in the mineral fee"). The "or" reflects that the phrases are alternative descriptions of an interest in production of the same minerals, while the "and" variation would encompass an interest in both minerals that may be produced and all other minerals that remain in and under the land.

Still, we have previously held that a deed reserving a 1/16 interest in "oil, gas or other mineral produced on or from under the land" created a mineral interest. *Devon Energy Prod. Co., LP v. Enplat II, LLC*, 697 S.W.3d 181, 184 (Tex. App.—El Paso 2023, pet. denied). While that abbreviated variation used "or," we noted that it did not use the traditional phrase "produced *and saved*." *Id.* We further emphasized the deed made no other reference to royalty. *Id.* The deed here not only includes traditional language indicating a royalty interest ("produced and saved") but expressly states the grantors' intention to reserve an interest in "royalty."

The parties have not cited any other authority, and we are not aware of any, addressing a similar "or" variation in a mineral deed. *See* Williams & Meyers § 304.5 (noting that "minerals, in, under and/or which may be hereafter produced and saved" was held in a 1950 decision to be a mineral interest, although the "mineral phraseology 'in and under' is almost exactly counter-balanced by the royalty terminology," but suggesting it would be "risky" to use the phrase to convey a mineral interest in Texas) (citing *Little v. Mountain View Dairies*, 217 P.2d 416, 417

---

to and under or that may be produced" and stating "said interest hereby reserved is a non-participating royalty"); *Halbert v. Green*, 293 S.W.2d 848 (Tex. 1956) (similar language in 1953 royalty deed); *Hoffman v. Magnolia Petroleum Co.*, 273 S.W. 828, 829 (Tex. [Comm'n Op.] 1925, holding approved) (similar language in 1918 deed, interpreted as dual conveyance of right of reverter and royalty); *but see Mecom v. Thompson*, 239 S.W.2d 847, 850 (Tex. App.— Galveston 1951, writ ref'd n.r.e.) (similar language in 1919 mineral deed).

(Cal. 1950)); *Barker v. Levy*, 507 S.W.2d 613, 616 (Tex. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.) (explaining that *Little* relied on a theory not recognized in Texas). We cannot assume the grantors considered the terms "and" and "or" to be interchangeable. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 69 (Tex. 2008); *see Shell Petroleum Corp. v. Royal Petroleum Corp.*, 137 S.W.2d 753, 758 (Tex. [Comm'n Op.] 1940) ("or" treated as disjunctive in royalty assignment provision absent "impelling reason apparent in the context" to construe it as "and").

On balance, we determine the two passages of the first portion of the reservation, when construed together, suggest a mineral interest was intended, though the language also suggests the possibility of an interest in less than the full mineral estate.

### (b) The second portion

The second portion of the reservation sentence states:

> provided, however, that the said C. R. Wilson and Mary Ida Wilson Allums shall not be entitled to receive any rental or bonus moneys paid for leases,

Beginning with "provided, however," the middle portion introduces an exception that excludes the right to receive rental and bonus moneys paid for leases. The Karli Successors argue the effect of this provision is to remove two of the five mineral-interest rights from an interest in the entire mineral estate plausibly created in the first portion. They urge that "attribute-stripping" language necessarily indicates a reservation of a mineral interest, not a royalty interest—otherwise, such wording would be superfluous. For that claim, they rely on *French*, which reasoned that similar language in a deed granting a 50-acre mineral interest would be "redundant" if the interest were in fact a royalty interest. 896 S.W.2d at 798. Two years later, however, the Supreme Court distinguished *French* based on an acreage description and reaffirmed that a reservation of "minerals" followed by language stripping away one or more rights may create a royalty interest. *Temple-Inland*, 958 S.W.2d at 185 (citing *Watkins v. Slaughter*, 189 S.W.2d 699 (Tex. 1945)). We

13

note the wording in this instance is unlike *French* because the reserved interest is expressed as a fraction of minerals, and not by acreage. In *Devon*, we followed the approach of *French* in determining that a mineral interest was suggested by language stripping away executive, delay rental, and bonus rights. 697 S.W.3d at 184. Given that the deed lacked any reference to royalty, the stripping language reasonably indicated that a mineral interest had been reserved. *Id.* Here, the stripping language is followed immediately by a statement that the grantors' intention was to reserve a royalty interest.

In light of *French* and *Temple-Inland*, the exclusion of bonus and rentals in the deed here could be construed either to strip those two rights from an interest in the mineral estate or to confirm those rights were not included in a bare royalty interest. We cannot rule out a royalty interest simply because such a clarification would be "unnecessary" or "redundant" in light of "controlling language" in the initial clause. *Luckel*, 819 S.W.2d at 463. Under the four-corners rule, the relative position of the clauses carries no weight. *Id.* While each must be given some effect, courts must also consider whether drafters included deliberate redundancies. *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 582 (Tex. 2022) ("We have repeatedly recognized, when faced with legal language that appears repetitive or otherwise unnecessary, that drafters often include redundant language to illustrate or emphasize their intent."). Here, whether the bonus-and-rental exclusion is deliberately redundant turns on historical drafting practices and the ordinary meaning of words. *Van Dyke*, 668 S.W.3d at 360.

Mid-twentieth century deeds frequently included redundant "attribute-stripping" language, because the terms "royalty" and "mineral interest" were often used interchangeably in the initial clause. Patrick H. Martin, *Unbundling the Executive Right: A Guide to Interpretation of the Power to Lease and Develop Oil and Gas Interests*, 37 Nat. Resources J. 311, 350 (1997). Royalty deeds

14

of the same era likewise contained redundancies regarding costs. *Chesapeake Expl., L.L.C. v. Hyder*, 483 S.W.3d 870, 873 (Tex. 2016); *Temple-Inland*, 958 S.W.2d at 185 (considering 1938 royalty deed with numerous redundancies regarding costs, bonus, and rentals). Such drafting was not necessarily mistaken but often clarifying. *See Schlittler*, 101 S.W.2d at 544 (1937 case holding a reserved interest in "royalty rights" did not participate in bonus or rentals yet cautioned that different language might reserve "either one, more or all"). The term "non-participating royalty interest"—itself redundant—was used following *Schlittler* to clarify that the interest included royalty but not bonus or rentals. Lee Jones, Jr., *Non-Participating Royalty*, 26 Tex. L. Rev. 569 (1948) (cited in *Plainsman*, 898 S.W.2d at 789). For instance, five years before the deed at issue, the Supreme Court construed a deed with similar "stripping" language ("shall receive no part of the payments of bonus or rentals") as reserving a royalty interest. *Watkins*, 189 S.W.2d at 700; *see also Temple-Inland*, 958 S.W.2d at 184 (reaffirming *Watkins* and reaching same result where deed stated grantor "shall be entitled to none of the bonus money therefor and to no part of the delay rentals") (emphasis omitted).

Nevertheless, the Karli Successors also argue that the stripping of rights to bonus and rentals only—and not of executive and development rights—further confirms that a mineral interest was intended. In other words, even assuming that stripping all rights except for royalty would establish a royalty interest, it would logically follow that failing to strip some of those rights confirms a mineral interest. Countering that point, the Wilson Successors assert that courts in 1950 had not yet formalized the five-right bundle to include development and executive rights, and the Supreme Court did not even recognize the executive right as a severable interest until 1990. *Day & Co.*, 786 S.W.2d at 669. Thus, the Wilson Successors contend that little can be inferred from

15

partial stripping and the absence of language specifically excluding executive and development rights.

Considering both the state of the law and the drafting practices of the period, we cannot conclude the mere exclusion of rights apart from royalty established a stripped mineral interest. The same holds true for incomplete stripping of bonus and rentals but not executive and development rights. *E.g.*, *Temple-Inland*, 958 S.W.2d at 185 (royalty interest conveyed despite incomplete stripping language); *Hudgins v. Lincoln Nat. Life Ins. Co.*, 144 F. Supp. 192, 193 (E.D. Tex. 1956) (citing *Klein v. Humble Oil & Ref. Co.*, 86 S.W.2d 1077, 1079 (Tex. 1935)) (stripping of bonus and delay rentals implied stripping of executive and development rights). At most, we merely observe that the exclusion of bonus and rentals is *some* indication that a mineral interest stripped only of bonus and rental rights was intended, *see Devon*, 697 S.W.3d at 184, but the language also suggests a lesser interest may have been intended. Proceeding onward, we turn to the third and final portion of the reservation language.

### (c) The third and final portion

The third portion reads:

> and it being the intention to reserve unto the said C.R. Wilson a one-fourth non-participating interest in the customary one-eighth royalty and unto the said Mary Ida Wilson Allums a one-fourth non-participating interest in the customary one-eighth royalty.

This final portion provides a statement of the parties' intent. Similar to the first portion, it includes duplicate language that pertains to C.R. Wilson and Mary Ida Wilson Allums. Read alone, a "non-participating interest in the customary one-eighth royalty" almost—yet not quite—coincides with the established term, "non-participating royalty interest." *Plainsman*, 898 S.W.2d at 789. By definition, a non-participating royalty interest is a type of royalty interest, solely consisting of the right to receive royalty payments. *Id.* Nevertheless, the term "non-participating"

16

has been used more generally to both royalty interests and mineral interests stripped of the executive right. *E.g.*, *Lesley v. Veterans Land Bd.*, 352 S.W.3d 479, 487 (Tex. 2011). Because the final portion employs language that closely resembles the established terminology for a non-participating royalty interest, it provides some indication that a royalty interest was intended. Still, the language could also refer to a mineral interest stripped of one or more rights.

As for the fractional size of the interest reserved, the final portion states that each grantor reserves a 1/4 interest in the customary 1/8 royalty (or a collective 1/2 of 1/8). If the two stated fractions are multiplied, they equal the single fraction stated in the first portion, 1/32 (or a collective 1/16). But we must presume that the use of the double fraction was intentional and that the fractions were not intended to be multiplied. *Van Dyke*, 668 S.W.3d at 361. On their face, then, the fractions as stated in the first and third portions of the reservation appear to be inconsistent. We therefore must next consider whether we may harmonize the entirety of the reservation language.

### (2) Harmonizing the language

Based on the parties' competing positions, the reservation would appear to be textually inconsistent. To recap, the first two portions of the language appear to reserve a collective 1/16 interest in minerals stripped of certain rights (or a possible royalty interest), yet the last portion appears to reserve a collective 1/2 non-participating royalty interest. In briefing, none of the parties has identified any precedent controlling such divergent clauses within a single sentence. Still, we must strive to harmonize the apparent inconsistencies to the extent possible. *See Hysaw*, 483 S.W.3d at 13. "[O]nly if the text remains incapable of a clear meaning—and thus is unavoidably ambiguous—would [we] then move beyond the traditional, neutral, and objective tools of textual analysis." *Van Dyke*, 668 S.W.3d at 362.

17

**(a) Does the interest include executive and development rights?**

Regarding the first question of whether the deed reserved a non-participating royalty interest or a stripped mineral interest including executive and development rights, we conclude that the reservation language as a whole more closely resembles language the Supreme Court has construed as creating or reserving stripped mineral interests, *Altman*, 712 S.W.2d at 118 (1939 deed reserving "minerals" stripped of rentals and executive rights); *French*, 896 S.W.2d at 796 (1943 deed conveying "minerals" stripped of bonus, rentals, executive, and development rights, yet stating that parties "understood and agreed that this conveyance is a royalty interest only"), rather than non-participating royalty interests, *see Temple-Inland*, 958 S.W.2d at 185 (1938 deed reserving "minerals" stripped of bonus, rentals, executive, and development rights, described repeatedly as "royalty interest"); *Watkins*, 189 S.W.2d at 699 (pre-1945 deed reserving "minerals" stripped of bonus, rentals, and executive rights, described as "royalty retained herein"). The distinction is fine and precise, and—as in those cases—little else suggests the parties to the 1950 deed considered mineral rights other than the economic benefits of a customary one-eighth lease. *See Luckel*, 819 S.W.2d at 462 (observing that parties to 1935 deed "probably contemplated nothing other than the usual one-eighth royalty" but courts must determine successors' rights based on deed language—"not the actual intent of the parties").

Having concluded that the Wilson Successors hold mineral interests stripped of certain rights, we next consider whether they retain any share of the executive or development rights. The deed does not expressly mention either. Its statement that the grantors intended to reserve a "non-participating interest in the customary one-eighth royalty," however, admits of two plausible readings. *See Altman*, 712 S.W.2d at 118 (recognizing that mineral deeds may define "participation" narrowly or broadly so as to include one or more of the five mineral rights). If

18

"non-participating" is read broadly, the Wilson Successors lack the right to participate in executive, development, bonus, and rental rights—leaving them with only the right to receive royalty payments. *See Greer v. Shook*, 503 S.W.3d 571, 578 (Tex. App.—El Paso 2016, pet. denied) (the "only practical effect" of such a stripped mineral interest is to create a royalty interest); *French*, 896 S.W.2d at 798 (resulting interest is "in the nature of a royalty")). Alternatively, the phrase "non-participating interest" may simply clarify the earlier provision that the grantors were not entitled to bonus and delay rentals: "C. R. Wilson and Mary Ida Wilson Allums shall not be entitled to receive any rental or bonus moneys paid for leases, and it being the intention to reserve . . . a non-participating interest in the customary one-eighth royalty."

In construing a term such as "non-participating interest," we reiterate that the standard is how an informed speaker would have understood it at the time the deed was executed. *Van Dyke*, 668 S.W.3d at 362. Because the rights implied in such an interest are defined by common law, the meaning of that language can only be fully explained by reference to "antiquated" court decisions. *Hysaw*, 483 S.W.3d at 5; *Concord*, 966 S.W.2d at 461 (determining royalty rights under 1937 deed in light of 1920s–1930s precedents later superseded).

Here, prevailing caselaw at the time of the deed suggests that a "non-participating interest" in the mineral estate—expressly excluding bonus and delay rentals but no other rights—was most likely understood to also exclude executive and development rights. In *Klein*, 86 S.W.2d at 1079, the Supreme Court construed a reservation of "one-eighth (1/8) of all mineral rights" providing that the grantors were "not to participate in any oil lease or rental bonuses" and "waive any rights they may have or be entitled to in any future oil or gas lease." Relying on this language and other evidence of record, the Court held that a mineral interest including executive and development rights was impliedly conveyed to the grantees, reasoning that stripping away rights to "oil lease or

19

rental bonuses" indicated the parties "contemplated that a mineral lease would be executed" and that the grantors—the "only persons with authority to execute" it before the conveyance—had waived any right to "participate in it." *Id. Klein* thus stands for the proposition that a reservation excluding participation in lease benefits would imply a conveyance of the rights necessary to exercise them.

As the Wilson Successors note, a sister court—relying solely on *Klein*—subsequently held that the mere exclusion of bonus and delay rentals necessarily excluded the executive right from a reservation of an interest in "minerals," even without "non-participating" language. *Grissom v. Guetersloh*, 391 S.W.2d 167, 168 (Tex. App.—Amarillo 1965, writ ref'd n.r.e.). A similar result was reached in *Hudgins*, a 1956 decision construing a reservation of a 1/2 interest in "minerals in, under and on said property but shall not be entitled to receive any part of any bonuses paid by leases or any part of the rentals." 144 F. Supp. at 193. Although acknowledging that *Klein* did not compel that result, the court reasoned that construing the deed to reserve a 1/2 executive right without a corresponding share of bonuses would produce anomalies contrary to the grantor's expressed intent. *Id.* The grantor in *Hudgins* refused to sign leases executed by the grantees and declined to negotiate any lease permitting a bonus, insisting instead on an above-market 1/4 royalty. The court concluded that permitting the grantor to circumvent the allocation of lease benefits in this way could not have been intended when the deed was executed. *Id.*

In addition, in *Martin v. Snuggs*, a sister court construed a similar reservation providing that the grantors "shall not participate in the cash bonus or cash rentals paid for drilling or delay payments." 302 S.W.2d 676, 676 (Tex. App.—Fort Worth 1957, writ ref'd n.r.e.). The court declined to follow *Hudgins*, initially finding the deed "on its face, did not give the grantee exclusive leasing rights, but reserved . . . all the rights inherent in a mineral estate, except only the

right to cash bonuses and delay rentals." *Id.* The court ultimately deferred to a jury finding that the parties intended to convey the executive right and reformed the deed to reserve a "nonparticipating mineral interest without any leasing and/or executory rights." *Id.* at 677–78. That holding rested on testimony that the parties understood the reservation to create a "non-participating royalty" and on a draft deed reserving "non-participating mineral rights." *Id.* at 679.

The Supreme Court has since confirmed that parties may freely sever and allocate the five mineral rights. *French*, 896 S.W.2d at 797.[7] The grantors here likewise could have made explicit that their reserved interest was non-participating as to the executive and development rights.[8] But contemporaneous deeds often addressed those two rights only obliquely, while expressly excluding participation in bonus and rentals. *E.g., Altman*, 712 S.W.2d at 118 (deed stating that grantee "does not participate in any rentals or leases" construed as reserving executive right). Influenced by earlier precedents, drafters at the time of the deed relied on multi-clause reservations of mineral interests to ensure that a reserved interest would include a floating royalty payable under

---

[7] The Court noted that the development right is "correlative" of the executive right; a non-executive mineral owner generally has no right to self-develop, as the executive is generally authorized to grant exclusive possession to the lessee. *Lesley v. Veterans Land Bd.*, 352 S.W.3d 479, 492 (Tex. 2011).

[8] *See Arnold v. Ashbel Smith Land Co.*, 307 S.W.2d 818, 825 (Tex. App.—Houston 1957, writ ref'd n.r.e.) (deed specified that royalty interest was "non-participating, in the sense that it shall not be necessary for the Grantor, its successors or assigns, to join in the execution of any oil, gas and mineral lease"); *Shaffer v. Schaleben*, 236 S.W.2d 234, 235 (Tex. App.—Waco 1951, writ ref'd n.r.e.) (construing "one-fourth royalty interest (non-participating as to the making of leases, receiving of bonuses and right to receive delayed rentals)"); *Bridges v. Uhl*, 663 S.W.3d 252, 258 (Tex. App.—El Paso 2022, no pet.) (construing "wholly non-participating" royalty reservation); *Joplin v. Nystel*, 212 S.W.2d 869, 872 (Tex. App.—Amarillo 1948, no writ) (grant of "one-half Mineral Interest" did not satisfy Statute of Frauds because it did not "reveal whether or not the mineral grant was to be fully participating or non-participating in leasing rights, bonuses and delay rentals under oil and gas leases").

21

future leases. *Concord*, 966 S.W.2d at 460.[9] Indeed, the term "non-participating royalty interest" was used at the time to describe mineral interests stripped of all rights except royalty.[10]

Under prevailing precedent, a reservation of a mineral interest excluding bonus and rentals—and further described as "non-participating"—would have been understood to reserve an interest stripped of the executive right. The reservation here mirrors the language in *Snuggs* and *Grissom* and echoes the testimony deemed dispositive in *Snuggs*. Construing the deed to reserve a 1/16 executive right without a corresponding share of bonus or rentals would create the same anomaly identified in *Hudgins*. The Karli Successors themselves acknowledge that vesting a 1/16 executive right in the Wilson Successors would entitle the latter to withhold ratification or negotiate independent leases—undermining the grantor's intended allocation of lease benefits. Conversely, assigning the sole executive right to the Karli Successors gives authority to negotiate royalty terms on behalf of the Wilson Successors, raising the possibility that the Karli Successors may seek a lower royalty in exchange for a higher bonus. But the duty of the sole executive in that circumstance is well-established, *KCM*, 457 S.W.3d at 74, and fully consistent with the language of the deed. As a commentator noted, allocating the sole executive right to a party entitled to receive all bonus and delay rental from the lease is "no doubt consistent with what most people

---

[9] As a contemporary scholar put it: "Assuming that the leasing power can be validly separated from a mineral interest, the frank conveyance of an interest phrased in mineral language with the power to lease expressly retained by the grantor should produce the desired result without the danger of dispute that exists as to the nature of interests created in terms of a percentage of royalties." Richard C. Maxwell, The Mineral-Royalty Distinction and the Expense of Production, 33 Tex. L. Rev. 463, 478–79 (1955).

[10] "A landowner, by conveyance or reservation, may create what might be termed a pure royalty, i.e., a right to receive free of cost a fraction of the production. Also, a landowner, before or after making a lease, may convey a fraction of the minerals and reserve the delay rentals, the right to make future leases and future bonuses arising from such leases or any one or more of these rights. *When, in a conveyance of minerals all of these rights are reserved, the interest conveyed is generally referred to as a non-participating royalty*." Conan Cantwell, *Term Royalty*, 7 Inst. on Oil & Gas L. & Tax'n 339, 341 (1956), quoted in Martin, 37 Nat. Resources J. at 350 (emphasis added); Ira H. Lustgarten & Owen Olpin, *Safeguarding Non-Leasing Oil and Gas Interests Derived from the Landowner*, 38 Tex. L. Rev. 550, 551 (1960) ("The interest may thus be viewed, not as a mineral interest minus the leasing power, but, properly, as a non-participating royalty interest plus the right to bonus and delay rental.").

engaged in mineral transactions have understood when they have designated an interest as "nonparticipating," and it is "difficult to imagine that people have intended" the opposite result. Martin, 37 Nat. Resources J. at 350.

We conclude that the grantors intended to convey the sole executive right to the grantee. In the absence of language to the contrary, we must further conclude that the development and self-development rights were also conveyed. *Lesley*, 352 S.W.3d at 487. Guided by contemporaneous caselaw and the four-corners rule, we therefore construe the 1950 deed to reserve a fractional interest in the mineral estate stripped of bonus, rental, executive, and development rights—that is, a mineral interest stripped of all rights except for the right to royalty payments.

### (b) What was the fractional size of the interest?

Proceeding to the size of the reserved interests, the Karli Successors argue that the fraction stated in the first portion of the reservation—"an undivided one-thirty-second right, title and interest in and to all oil, gas and other minerals in and under said lands"—represented a 1/32 (collective 1/16) mineral interest, including a 1/32 (collective 1/16) floating share of royalty. Second, they argue that the fraction in the final portion—"a one-fourth non-participating interest in the customary one-eighth royalty"—merely restates this result: 1/4 of 1/8 equals 1/32. On their reading, this phrase expresses an intention to reserve a "fixed" 1/32 fraction of the mineral estate— yet they further insist that because a mineral estate a floating share of royalty, the 1/32 must be multiplied again by the lessor's 1/8 or other fraction provided in the lease so as to determine the Wilson Successors' share of production. Thus, the Karli Successors contend that the statement of intention reserves to the Wilson Successors an implausible fixed-and-floating triple fraction of 1/128 of production under the customary 1/8, or some other fraction of production (between 1/64

23

and 3/256) under current leases. We conclude this interpretation is inconsistent with both precedent and common sense.

Generally, a fractional mineral interest includes a corresponding fraction of each constituent right. *Day & Co.*, 786 S.W.2d at 669 n.1. Thus, we have consistently held that a determination that a deed reserved a 1/16 fractional mineral interest necessarily resulted in a determination that the grantors reserved a 1/16 floating fraction of royalty. *Devon*, 697 S.W.3d at 184. But where a reservation includes multiple, inconsistent fractions, the fraction stated in the initial clause is not determinative. *Benge v. Scharbauer*, 259 S.W.2d 166, 169 (Tex. 1953). Indeed, when the initial fraction is a multiple of 1/8, the reverse may be true.

In *Concord*, 966 S.W.2d at 460, the Supreme Court construed a granting clause describing a 1/96 mineral interest as instead conveying a 1/12 interest so as to give effect to a subject-to clause that tied the grant to a 1/12 royalty under existing 1/8 leases. The Court explained that this approach traced back to *Tipps v. Bodine*, 101 S.W.2d 1076 (Tex. App.—Texarkana 1937, writ ref'd), which "blessed" the use of "1/16" in a granting clause and "1/2" in a subsequent clause to express the conveyance of 1/2 of the grantor's mineral estate when the property was subject to a 1/8 lease. *Concord* further observed that after *Tipps*, this counterintuitive method of stating the interest was recognized as a "proper method" to express mineral fractions. *Concord*, 966 S.W.2d at 461. The Court applied the same rule in *Garrett v. Dils Co.*, 299 S.W.2d 904 (Tex. 1957), *Luckel*, 819 S.W.2d at 462, and *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466 (Tex. 1991). We also followed the approach in *Davis v. COG Operating, LLC*, 658 S.W.3d 784, 794 (Tex. App.—El Paso 2022, pet. denied) and *Greer*, 503 S.W.3d at 591.

The Karli Successors argue more recent cases permit us to construe such a deed as providing a "fixed" fraction in the initial clause followed by a double fraction that merely restates

24

the fraction. In *Hysaw*, the Court acknowledged that it had previously taken such a "straight-forward mathematical approach" in construing a three-fraction reservation of "one-half *of* one-eighth *of* the [1/8] royalty that may be produced." 483 S.W.3d at 12 n.14 (citing *Harriss v. Ritter*, 279 S.W.2d 845 (Tex. 1955)). Without expressly approving of that approach, the Supreme Court suggested that multiplication of the double fraction (1/2 of 1/8) was reasonable because of the subsequent language ("of the royalty") indicating that the double fraction would be multiplied by a third fraction as provided in the lease. That said, the Court explained that interpreting double fractions including 1/8 by multiplying the initial fraction by 1/8 "fails to accord any significance to the use of double fractions in lieu of a single fraction" or to "phrases such as 'the usual 1/8 royalty.'" *Id.* The Court drew the same distinction in *Concord*, citing another early case in which it had held that 1/16 of 1/8 "*of* all royalty" should be multiplied to reach a 1/128 floating fraction of royalty. *See* 966 S.W.2d at 456 (citing *Richardson v. Hart*, 185 S.W.2d 563 (1945)). The Karli Successors seek the same 1/128 fraction, yet the deed here does not have the second "of." *See id.* (explaining that *Richardson* "boiled down to how to construe the use of the word 'of' in a royalty conveyance").

Post-*Hysaw*, we have consistently declined to rely on rote arithmetic to collapse double fractions.[11] The Supreme Court has subsequently held that any reference to 1/8 in a multiple-

___

[11] *Permico Royalties, LLC v. Barron Props. Ltd.*, No. 08-22-00168-CV, 2023 WL 4442007, at *6 (Tex. App.—El Paso July 10, 2023, pet. filed) (mem. op.) (addressing single fraction restated as a double fraction in parentheses); *Royalty Asset Holdings II, LP v. Bayswater Fund III-A LLC*, No. 08-22-00108-CV, 2023 WL 2533169, at *1 (Tex. App.—El Paso Mar. 15, 2023, pet. denied) (mem. op.) ("1/4th of the land owner's usual 1/8th royalty interest (being a full 1/32nd royalty interest"); *Johnson v. Clifton*, 719 S.W.3d 270, 275 (Tex. App.—El Paso 2023, pet. granted) ("1/128 (1/16 of the usual 1/8 royalty) part of all of the oil, gas, and other minerals"); *Montgomery v. ES3 Minerals, LLC*, 697 S.W.3d 397, 400 (Tex. App.—El Paso 2024, no pet.) ("royalty of one-fourth (1/4th) of the landowner's usual one-eighth (1/8th) royalty"); *Powder River Mineral Partners, LLC v. Cimarex Energy Co.*, No. 08-23-00058-CV, 2023 WL 8703418, at *2 (Tex. App.—El Paso Dec. 15, 2023, pet. denied) ("three sixteenths (3/16ths) interest in and to all the oil, gas and other minerals in and under that may be produced from the . . . which interest shall not be chargeable with any production costs or expense); *Bridges v. Uhl*, 663 S.W.3d 252, 258 (Tex. App.—El Paso 2022, no pet.) ("one-half (1/2) of the usual one-eighth (1/8) royalty, or one-sixteenth (1/16) of the total production").

fraction deed is presumed to serve as shorthand for the lessor's entire interest, which was typically subject to an existing or anticipated lease with a 1/8 royalty. *Van Dyke*, 668 S.W.3d at 359. The same implication was applied where the deed did not expressly mention "1/8" but the restated fraction was a multiple of 1/8. *U.S. Shale Energy II, LLC v. Laborde Props., L.P.*, 551 S.W.3d 148, 153 (Tex. 2018). The Court has explained that the use of "1/8" reflects a misconception regarding the nature of the estate owned by a grantor who has previously leased the minerals and an assumption that future leases would provide a 1/8 lessor's royalty. *Van Dyke*, 668 S.W.3d at 359. In each of these cases, the double fractions were interpreted to provide a floating fraction of royalty. Notably, the Karli Successors agree that the reservation provides a floating fraction of royalty; their contention relies on expanding the language of the reservation to provide a collective 1/2 of 1/8 *of the lessors' royalty*. This would require extending the *Van Dyke* presumption in a way that adds words and contradicts the plain language of the deed.

Applying these principles, the reference here to "a one-fourth non-participating interest in the customary one-eighth royalty" cannot be collapsed into a restatement of a 1/32 fraction. Rather, it reflects established practice—recognized since *Tipps*—of expressing a reservation of 1/4 of the mineral estate with an initial provision stating a 1/32 interest by including a later provision stating a 1/4 interest of the "customary one-eighth royalty." *See Concord*, 966 S.W.2d at 461. This reading gives effect to both provisions, harmonizes the deed, and accords with the drafting conventions of the time.[12]

---

[12] We note that the double fraction here includes the "customary one-eighth," as opposed to the "one-eighth" as in *Van Dyke*, 668 S.W.3d at 357. This Court has repeatedly applied the *Van Dyke* presumption to double fractions including the "usual one-eighth." *Montgomery v. ES3 Minerals, LLC*, 697 S.W.3d 397, 400–01 (Tex. App.—El Paso 2024, no pet.); *Johnson v. Clifton*, 719 S.W.3d 270, 274 (Tex. App.—El Paso 2023, pet. granted); *Permico Royalties, LLC v. Barron Properties Ltd.*, No. 08-22-00168-CV, 2023 WL 4442007, at *1 (Tex. App.—El Paso 2023, pet. dism'd by agr.) (mem. op.); *Royalty Asset Holdings II, LP v. Bayswater Fund III-A LLC*, No. 08-22-00108-CV, 2023 WL

We therefore hold that grantors C. R. Wilson and Mary Ida Wilson Allums each reserved a 1/4 interest in the mineral estate stripped of all rights except the right to royalty payments equal to 1/4 of the respective lease royalty.

In sum, we sustain the Karli Successors' first issue and overrule their second issue.

## V. CONCLUSION

We hold the trial court erred in part only. That is, it erred in declaring that the deed's grantors reserved a non-participating royalty interest but it did not err in declaring that they each reserved a 1/4 floating interest. We hold the named grantors, C.R. Wilson and Mary Ida Wilson Allums, each reserved a non-participating mineral interest stripped of all component rights except for the right to royalty payments equal to 1/4 of the respective lease royalty.

Accordingly, we render judgment that, with respect to the 196.7–acre tract described in the deed dated December 20, 1950, recorded in Volume 147, Page 251 of the Deed Records of Brazos County, Texas:

- the heirs and assigns of C.R. Wilson own a 1/4 non-participating mineral interest, stripped of all attributes aside from the right to receive royalty payments in the amount of 1/4 of the lease royalty under the current and any future leases; and

---

2533169, at *1 (Tex. App.—El Paso 2023, pet. denied) (mem. op.); *see also Bridges v. Uhl*, 663 S.W.3d 252, 265 (Tex. App.—El Paso 2022, no pet.); *WTX Fund, LLC v. Brown*, 595 S.W.3d 285 (Tex. App.—El Paso 2020, pet. denied). A sister court recently followed this approach, noting that "the Texas Supreme Court has not specifically discussed whether 'the *usual* 1/8th' phrase qualifies to rebut the *Van Dyke* presumption." *Boren Descendants & Royalty Owners v. Fasken Oil & Ranch, Ltd.*, 703 S.W.3d 874, 885 (Tex. App.—Eastland 2024, pet. filed); *see also Hoffman v. Thomson*, 630 S.W.3d 436 (Tex. App.—San Antonio 2021), pet. granted, judgm't vacated & remanded, 674 S.W.3d 927 (Tex. 2023) (remanded for reconsideration in light of *Van Dyke*). Here, the Karli Successors did not preserve this issue. On the contrary, it complained of the trial court's declaration of a collective 1/2 fraction of royalty solely on the basis of the placement of a different single fraction (a collective 1/16) in the initial clause followed by the double fraction in the final clause—arguing that "had the reservation in the case at bar been '1/4 of the usual 1/8th' [in the initial clause] then the *Van Dyke* rebuttable presumption could come into effect."

- the heirs and assigns of Mary Ida Wilson Allums own an equivalent 1/4 non-participating mineral interest, stripped of all attributes aside from the right to receive royalty payments in the amount of 1/4 of the lease royalty under the current and any future leases.

GINA M. PALAFOX, Justice

October 30, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.